Joel LERICH, Respondent (50045 and 50078)-Relator (50092),

v.

THERMO SYSTEMS, INC., et al., Relators (50045 and 50078)-Respondent (50092).

Nos. 50045, 50078 and 50092.

Supreme Court of Minnesota.

April 11, 1980.

Van Eps & Gilmore, and George R. Benton, Minneapolis, for relators.

Grose Von Holtum, Von Holtum, Sieben & Schmidt, and Timothy J. McCoy, Minneapolis, for respondents.

KELLY, Justice.

Certiorari to review an award of permanent partial disability which relators, the employer and insurer, contend was computed erroneously, either because employee did not sustain simultaneous injuries or because, if he did, compensation for the disabilities he sustained to his arms and legs should have been awarded pursuant to Minn.Stat. § 176.101, subd. 3(37) (1974). We affirm.

Employee was injured in the course of his employment on October 15, 1974, when a collision occurred between an automobile in which he was a passenger and a bus. He

---

suffered injury to his spinal cord which rendered him a quadraplegic, and the parties have stipulated that he has 100% permanent partial disability to his spine, to each arm, and to each leg. He has received temporary total disability compensation since the date of the accident and in November 1977 filed a claim petition seeking permanent partial disability. Relators denied liability to pay both temporary total and permanent partial disability benefits concurrently on the ground that the statute so requiring was unconstitutional, a claim ultimately settled by this court's determination in *Tracy v. Streater/Litton Industries*, 283 N.W.2d 909, 916 (Minn.1979).

The compensation judge applied the following provisions of § 176.101, sub. 3, in determining the amount of compensation for permanent partial disability to which employee was entitled:

Section 176.101, subd. 3(14), providing compensation for 270 weeks for the loss of an arm.[1]

Section 176.101, subd. 3(19), providing compensation for 220 weeks for the loss of a leg so close to the hip that no effective artificial member can be used.

Section 176.101, subd. 3(42), providing compensation for 350 weeks for a 100% permanent partial disability resulting from injury to the back.

He then increased the resulting total of 1,330 weeks by 15% pursuant to § 176.101, subd. 3(46), the simultaneous injury provision. As a consequence, he determined that employee was entitled to permanent partial disability benefits for a total of 1,529.5 weeks, or a total of $152,950, together with interest at 6% from February 26, 1975, when relators had been informed that employee was a quadraplegic.

In so computing employee's award, the compensation judge rejected relators' claim that employee had not sustained simultaneous injuries and had sustained only an injury to his back. He also rejected the claim that, assuming employee had sustained simultaneous injuries, compensation for the permanent partial disabilities of his limbs must be computed pursuant to § 176.-101, subd. 3(37). This provision, part of the so-called double disabilities schedule, paragraphs (22) to (37) of § 176.101, subd. 3, provides compensation for 500 weeks "[f]or the loss of one arm and one leg." An award thereunder is not subject to increase under the simultaneous injury provision of § 176.101, subd. 3(46), providing in part:

In cases of permanent partial disability caused by simultaneous injury to two or more members, the applicable schedules in this subdivision shall be increased by 15 percent. This clause shall not apply when the injuries are compensated under paragraphs 22 to 37 inclusive, of this subdivision.

Thus, as relators would compute the compensation due for employee's permanent partial disabilities, he would receive benefits for 1,000 weeks for the loss of use of his arms and legs and for 350 weeks for the disability sustained to his back.

The court of appeals affirmed the decision of the compensation judge, agreeing with him that employee had indeed sustained simultaneous injuries to his back and his limbs, and that the compensation to be awarded therefor was properly computed pursuant to § 176.101, subd. 3(14, 19, 42), increased by 15% through application of subd. 3(46).

In this court relators make the same arguments as below. Their claim that employee did not sustain simultaneous injuries needs no discussion since that claim was considered and rejected in *Tracy v. Streater/Litton Industries*, 283 N.W.2d 909, 917 (Minn.1979). The real issue is whether the disabilities employee sustained to his arms and legs should be compensated by use of § 176.101, subd. 3(14, 19), augmented pursuant to § 176.101, subd. 3(46). Relators contend that the injury comes literally within the scope of § 176.101, subd. 3(37),

---

1. Minn.Stat. § 176.101, subd. 3(44) (1974), provided in part: "In all cases of permanent partial disability it is considered that the permanent loss of the use of a member is equivalent to and draws the same compensation as the loss of that member * * *."

since it involved "the loss of an arm and a leg." The court of appeals, relying on this court's statement in *Jacobson v. Stone & Webster*, 177 Minn. 589, 590, 225 N.W. 895, 895 (1929), that by reason of the double disabilities schedule "concurrent loss of two members shall be compensated at a rate higher than is allowed for such injuries considered separately," concluded that the legislature did not intend that a provision of the double disabilities schedule should be used when its application would result in an employee receiving less compensation than he would receive through use of the schedules providing for compensation for disability to individual members. That court and the compensation judge pointed out incongruities which exist under the present compensation schedule: *e. g.*, an employee who suffers total loss of an arm and a leg would receive only 500 weeks' compensation under § 176.101, subd. 3(37), while an employee who sustains a 90% permanent partial disability of one arm and one leg would receive 507.15 weeks' compensation by application of paragraphs (14), (19), and (46) of § 176.101, subd. 3. We agree that the legislature in all probability did not anticipate that a less seriously disabled worker would receive more compensation than one who is more severely disabled. The different times of enactment of the double disabilities provisions (most originated in 1915 Minn.Laws, ch. 209, § 13) and the simultaneous injury provision (first enacted in 1953 Minn.Laws, ch. 755, § 10) may explain the existence of these incongruities. In any event, we would suggest that legislature consider again the present provisions of § 176.101, subd. 3, to remove all doubt about its intent with respect to the amounts of permanent partial disability benefits to which disabled employees are entitled.[2]

In this case, however, we agree with the court of appeals' determination that the double disabilities schedule contains no provisions applicable to employee's disabilities. Section 176.101, subd. 3(28), provides compensation for "the loss of two arms other than at the shoulder," and paragraph (30)

provides compensation for "the loss of two legs, other than so close to the hips that no effective artificial member can be used." The nature of employee's disabilities precludes application of these provisions. While paragraph (37) provides compensation for "the loss of one arm and one leg," that provision also does not accurately describe employee's disabilities and it seems clear that doubling the compensation due under that paragraph for the loss of one arm and one leg does not compensate employee adequately for his disabilities. We conclude that even a literal construction of paragraph (37) does not warrant its application here.

Relators' final contention that the court of appeals improperly awarded employee attorneys fees is without merit. *See,* Minn. Stat. 176.511, subd. 3 (1978).

Employee is allowed $350 attorneys fees.

Affirmed.

---

2. Since the present compensation schedule contains no provision directed specifically to paraplegia, the advisability of adding such a provision could also be explored.