**Mervin P. KIRCHNER,**
**Relator, Respondent,**

**v.**

**COUNTY OF ANOKA and Iowa**
**National Mutual Insurance Co.,**
**Respondents, Relators,**

**County of Anoka and Home Insurance**
**Company, Respondents,**

**State Treasurer, Custodian of the**
**Special Compensation Fund,**
**Respondent.**

**Nos. C4–86–1195, C7–86–1210.**

Supreme Court of Minnesota.

Aug. 21, 1987.

Rehearing Denied Oct 29, 1987.

---

Cheryl LeClair-Sommer, St. Paul, for Mervin P. Kirchner, respondent C7–86–1210.

Kay N. Hunt, Minneapolis, for Anoka County, and Iowa Nat. Mut. Ins. Co. relator C7–86–1210.

Kristin B. Maland, Minneapolis, for Anoka County and Home Ins. Co.

Harold W. Schultz, II, St. Paul, for Special Compensation Fund.

## OPINION

WAHL, Justice.

This workers' compensation matter is before us again following remand in *Kirchner v. County of Anoka (Kirchner I)*, 339 N.W.2d 908 (Minn.1983). Employee Mervin Kirchner was injured in 1977 while working for the County of Anoka (county) and again in 1979 while working for the county at lower wages. We held that he was entitled to temporary partial disability benefits based on his wages at the time of the first injury, and temporary total disability benefits based on his wages at the time of the second injury. We remanded the matter for computation of benefits. The compensation judge on remand computed the two sets of benefits separately and awarded temporary partial benefits for the first injury, to be paid by Iowa National Mutual Insurance Company (Iowa National), and temporary total benefits for the second injury and supplementary benefits, to be paid by Home Insurance Company (Home). She also awarded permanent partial disability benefits and attorney fees. The Workers' Compensation Court of Appeals (WCCA) affirmed the calculations but imposed a maximum limit on the total amount of combined temporary disability benefits the employee could receive, and disallowed the supplementary benefits. We affirm as modified.

### I.

Kirchner was driving trucks and heavy equipment for the Anoka County Highway

Department on November 14, 1977, when he suffered a work-related injury to his back. At the time he was earning a weekly wage of $296.40. He received temporary total disability benefits from Iowa National, the county's insurer at that time, for the periods of his hospitalization and recuperation, Minn.Stat. § 176.101, subd. 1 (1978), and a lump sum payment for the 15% permanent disability of his back. Minn.Stat. § 176.101, subd. 3 (1978) (repealed 1983). He was registered with the Minnesota Department of Labor and Industry on June 15, 1978, as a physically-impaired employee. He returned to work for the county in October 1978 as a part-time draftsman earning $93 a week. He continued to receive temporary partial disability benefits from Iowa National after he returned to work, in the amount of 66⅔% of the difference between his wage at the time of the injury and his wage as a draftsman. Minn. Stat. § 176.101, subd. 2 (1978). In February of 1979 Kirchner fell at work and was injured again. This second injury was held to be a new injury compensable under the Workers' Compensation Act, causing additional permanent impairment of Kirchner's back. He has been unable to work since June 1979.

The compensation judge, following our decision in *Kirchner I*, ordered Iowa National, the insurer at the time of the first injury, to pay Kirchner temporary partial disability from October 1, 1978, through June 15, 1984, the date of the second hearing, and continuing. Iowa National was also ordered to pay 9% permanent partial disability of the left leg, in addition to the 15% permanent partial disability of the back, plus a 15% simultaneous injury factor. Home, the insurer at the time of the second injury, was ordered to pay temporary total benefits from February 28, 1979 (except for a period of employment from April to June 1979) through June 15, 1984, the date of the second hearing, and continuing, and to pay supplementary benefits. Home was also ordered to pay 5% permanent partial disability of the back, 3% permanent partial disability of the left leg, plus a 15% simultaneous injury factor. Home was also ordered to reimburse Iowa

National for the amounts Iowa National paid relating to the second injury. The Custodian of the Special Compensation Fund was ordered to reimburse Home for all supplementary benefits paid and all weekly benefits paid for temporary total disability over the statutory deductible amount. Both Iowa National and Home were ordered to pay a share of Kirchner's reasonable attorney fees for representation in connection with the dispute on permanent partial disability (Minn.Stat. § 176.-081, subd. 7 (1978)) and attorney fees for other issues (Minn.Stat. § 176.081, subd. 8 (1978), and § 176.191 (1978)).

The WCCA agreed with much of the compensation judge's order but held that the combined sum of the separate awards for temporary partial and temporary total disability could not exceed the maximum adjusted compensation rate applicable to the first injury. Placing an upper limit upon the total of the temporary disability benefits payable to the employee, the WCCA calculated the obligations of the two insurers by using the compensation judge's calculations for the temporary partial disability benefits payable by Iowa National, and then subtracted these benefits from the maximum compensation rate applicable to a 1977 injury, as adjusted, to determine the obligation of Home. The WCCA also denied Iowa National's motion for attorney fees from Home.

Iowa National appeals, raising questions about the calculation of temporary disability benefits, particularly with respect to the imposition of a maximum, about the award of permanent partial disability benefits, and about attorney fees. Kirchner appeals the imposition of the maximum on temporary disability benefits and the disallowance of supplementary benefits.

## II

We will begin by discussing the issues concerning the computation of temporary disability benefits. First, Iowa National invites us to reconsider and reverse our decision in *Kirchner I*. This we decline to do. Iowa National's arguments were fully considered when that decision was made,

and were rejected. We reaffirm that decision and the reasoning which supported it.

Next is the issue of whether a maximum should be imposed. Kirchner argues that the WCCA erred as a matter of law in holding that the employee's combined temporary partial and temporary total disability benefits are limited to the maximum rate at the time of the first injury. He argues that the legislature has determined the employee is entitled to benefits from each injury subject only to the maximum amount of benefits on *that* date of injury. The parties rightly note, as did the compensation judge, that *Kirchner I* made no mention of whether the combined concurrent awards of temporary partial and temporary total disability benefits should be limited by a maximum. Nor does the statute address this question.

■ The statute does limit temporary total and temporary partial disabilities when calculated separately. Minn.Stat. § 176.101, subd. 1 (1978) sets the maximum compensation for temporary total disability at the statewide average weekly wage for the preceding year, and § 176.101, subd. 2, similarly makes temporary partial disability benefits subject to a maximum compensation equal to the statewide average weekly wage. The intent of the legislature, as evinced in this section, is to impose a maximum on the disability benefits of an employee who is temporarily totally disabled. There would be no reason to treat an employee who is totally disabled as a result of two injuries differently from an employee who is totally disabled from a single injury. Larson, in his well-respected treatise on workers' compensation, supports this reasoning as follows:

> There is both a theoretical and a practical reason for the holding that awards for successive or concurrent permanent injuries should not take the form of weekly payments higher than the weekly maxima for total disability. The theoretical reason is that, at a given moment in time, a person can be no more than totally disabled.

2 A. Larson, *The Law of Workmen's Compensation* § 59.41 (1986) (footnotes omitted).

The employee argues that there is no statutory authority for imposing a maximum on the combined temporary partial and temporary total disability benefits. We decided *Kirchner I* requiring the concurrent awards of temporary partial and temporary total benefits because the result was consistent with the language of the statute, the general compensatory policy of the workers' compensation law, and the policy of the second injury law. *Kirchner*, 339 N.W.2d at 912. The requirement of a maximum on the combined amount of all temporary disability benefits, as well, comports with the language of the statute and the intent of the legislature reflected in that language. The WCCA similarly interpreted the statute in holding that the combined amount of temporary partial and temporary total benefits may not exceed the statutory limit for total disability benefits.

■ Because a maximum on temporary disability benefits is most consistent with the statute, and in deference to the expertise of the WCCA, we hold that the combined amount of temporary partial and temporary total benefits may not exceed the statutory maximum for temporary total disability benefits.

Having decided that a maximum must apply, we must then decide which maximum to apply, the statewide average weekly wage for the time of the first injury or the statewide average weekly wage for the time of the second injury. While the WCCA used the date of the first injury to determine the maximum to be applied, we modify that decision by holding that the statutory maximum is calculated using the date of the injury which caused total disability, in this case the date of the second injury.[1]

■ The question remains as to how to apportion the temporary disability benefit payments between the insurers. Since a maximum is to be imposed, the total

---

1. The maximum, of course, is adjusted according to Minn.Stat. § 176.645.

amount of the disability payments will be reduced. The various proposals of the parties are (1) that Iowa National should pay its full share for the first injury and Home pay the remainder, or (2) that Home should pay its full share for the second injury and Iowa National pay the remainder, or (3) that the shares should be calculated proportionately. The WCCA appropriately used the first of these methods. If Kirchner had not been injured a second time, Iowa National would have continued to be liable for the full amount of benefits due from the first injury. Furthermore, it is reasonable to favor Home, the later insurer, since, as we said in *Kirchner I*, the legislature intended to encourage the employment of physically impaired people. 339 N.W.2d at 912. We hold, therefore, that when temporary partial and temporary total disability benefits are reduced because of a statutory maximum, the obligation of the earlier insurer is calculated first and the later insurer pays the remainder. In this case Iowa National's obligation for temporary disability benefits for the 1977 injury should be calculated first, then Home's obligation for temporary disability for the 1979 injury should be calculated by subtracting Iowa National's obligation from the statutory maximum.

The employee also argues for supplementary benefits, but since the employee's combined temporary disability benefits exceed the threshold amount for supplementary benefits, supplementary benefits are inappropriate. Minn.Stat. § 176.132, subd. 2(a) (1986).

### III.

We turn now to the issues concerning permanent partial disability benefits. The compensation judge awarded Kirchner permanent partial disability benefits based on his first injury: 15% permanent partial disability of the back and 9% of the left leg, plus a factor for simultaneous injury of two or more members. The WCCA affirmed. Iowa National contends that the leg problem was a symptom of the back injury and so should not be the basis of a separate award. This contention is answered by our decision in *Buganski v.*

*Onan Corp.*, 351 N.W.2d 637, 638 (Minn. 1984) where we determined that "[a]n injury to the spine which causes loss of use of a limb may result in simultaneous injuries" both of which are compensable. For example, in *Lerich v. Thermo Systems, Inc.*, 292 N.W.2d 741, 741–43 (Minn.1980), a quadriplegic received benefits for loss of use of his arms and legs, plus the additional factor for simultaneous injuries, even though the injury was to his spine. The statute gives a schedule for compensation of loss of various body parts and does not look at what causes the loss. Minn.Stat. § 176.101, subd. 3 (1978) (repealed 1983). Therefore, even if Kirchner's leg problem was caused by his back problem, he is entitled to permanent partial disability benefits for both, plus the simultaneous injury factor.

Iowa National also argues that Dr. Charles J. Cooley's rating of 15% disability of the spine included the effect of the leg disability. Cooley rated the spine disability in May 1978 and commented on leg problems but did not separately rate the leg disability until March 1981. However, the doctor was seeing the employee on an ongoing basis, and presented all his ratings in the same letter, unlike *Buganski v. Onan Corp.*, where one doctor found an arm injury and a different doctor later found a back injury, and the court remanded to explore the basis of the later rating. 351 N.W.2d at 638–39. Furthermore, it is possible that a leg problem caused by the original injury might not be evaluated as serious until later; a disability that shows up considerably after the original injury may still be considered a simultaneous injury. *Tracy v. Streater/Litton Industries*, 283 N.W.2d 909, 917 (Minn.1979). Cooley's ratings were accepted by both the compensation judge and the workers' compensation court of appeals. We hold that findings of permanent partial disability for employee's back and leg resulting in separate awards are not manifestly contrary to the evidence. See *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54, 60 (Minn.1984).

The last area of concern is payment of attorney fees. The compensation judge ordered attorney fees for the employee's attorney in several parts: First, fees for the

attorney, coming out of the award to the employee, for the dispute about whether the employee should get permanent partial disability benefits. Second, 25% of the fees generated by the permanent partial disability issue to be paid by the insurers to the employee for reimbursement, pursuant to Minn.Stat. § 176.081, subd. 7. This award is appropriate when the employer or insurer resists payment of compensation and the employee has hired an attorney who successfully procures payment. Third, fees for the employee's attorney, paid by the insurers, for all other issues in the case, pursuant to Minn.Stat. § 176.081, subd. 8, or § 176.191, subd. 1. This award is appropriate where the dispute is primarily between two or more employers or insurers to determine who is liable for benefits and the employee incurs attorney fees in order to protect his or her rights. The WCCA affirmed the award of fees. Only the third set of fees is in dispute here.

■ Iowa National claims that fees pursuant to Minn.Stat. § 176.081; subd. 8, or § 176.191 are inappropriate because the dispute was not one primarily between the insurers. Iowa National points to the fact that subdivision 7 fees were awarded, and argues that there is a fundamental contradiction in awarding both subdivision 7 fees and subdivision 8/section 176.191 fees because the former are for a dispute between the employee and the employer/insurer and the latter are for a dispute between two or more employers/insurers. However, fees pursuant to § 176.191 are awarded when the dispute is *primarily* one between insurers; it need not be solely between insurers. *Patnode v. Lyon's Food Products, Inc.*, 312 Minn. 570, 572, 251 N.W.2d 692, 693 (1977). Award of attorney fees under § 176.191 is appropriate even when the employee's right to benefits is disputed, including the right to permanent partial disability, if the primary issue is one of apportionment of benefits. *Marsden v. Village of Mabel*, 253 N.W.2d 275 (Minn.1977). In Kirchner's case there was no dispute that the employee was totally disabled; the primary issue was which insurer would pay the benefits. Therefore award of attorney fees under § 176.081, subd. 8, or § 176.191 is appropriate.

Iowa National next claims that only the party liable for benefits is liable for attorney fees and that Home is the party liable. Because Iowa National paid the benefits pending litigation and now would be getting contribution from Home, it contends that it could not be considered "the party held liable." However, both Iowa National and Home were held liable for substantial benefits to the employee. They are both "parties held liable" and should both pay the attorney fees. Minn.Stat. § 176.191.

Finally, Iowa National claims reimbursement from Home for its own attorney fees on the basis that it is the "claimant" in Minn.Stat. § 176.191. Since it was liable for benefits, it should pay its own attorney fees. See *Lease v. Pemtom, Inc.*, 305 Minn. 6, 13, 232 N.W.2d 424, 428 (1975). Furthermore, award of attorney fees under § 176.191 is discretionary. Iowa National is not entitled to attorney fees. We hold that each insurer is liable for a portion of the employee's attorney fees as determined by the workers' compensation court of appeals, and each insurer is liable for its own attorney fees.

We affirm the WCCA in all respects except that the statutory maximum amount of temporary disability benefits should be calculated using the date of the injury which caused total disability.

Affirmed as modified.