# ESTHER KRAUSE v. F. A. SWARTWOOD AND ANOTHER.[1]

March 23, 1928.

No. 26,427.

**What commission's finding of accidental injury to employe implies.**

1. Where an employe suffers chemical poisoning and the industrial commission finds that there was an accidental injury, this court will assume that there was injury to the physical structure of the body at the time of the injury, for otherwise there could have been no accidental injury within the meaning of the workmen's compensation law.

**Injury to physician's office assistant arose out of her employment.**

2. Relator, an office assistant to a physician and surgeon, was one day directed by her employer to lunch close to the office in order more readily to receive and answer expected telephone calls of an emergency nature. The employer furnished the price of the lunch. From some foreign element in the coffee, which was part of the meal, chemical poisoning ensued. *Held* that the injury arose out of and in the course of the employment.

Workmen's Compensation Acts—C. J. p. 73 n. 76; p. 80 n. 25; p. 123 n. 43.

See note in 6 A. L. R. 1151; 28 R. C. L. 804; 3 R. C. L. Supp. 1596; 4 R. C. L. Supp. 1857.
See note in 23 L.R.A.(N.S.) 956; 18 R. C. L. 583; 4 R. C. L. Supp. 1197; 6 R. C. L. Supp. 1077.

Certiorari to review an order of the industrial commission denying compensation to relator for injuries sustained from chemical poisoning. Reversed.

*Moonan & Moonan,* for relator.

*L. N. Foster,* for respondents Swartwood and Travelers Insurance Company, his insurer.

STONE, J.

Certiorari to review an order of the industrial commission denying compensation.

[1] Reported in 218 N. W. 555.

At the time of her alleged injury relator was employed in the office of the respondent Dr. F. A. Swartwood at Waseca. Her duties were those of office assistant and secretary to a physician and surgeon. Her "noon hour" was from 12 to 1, and it was her custom to go home for lunch. On May 26, 1926, at the request of Dr. Swartwood, who expected to be absent at midday, she lunched at a cafe near the office. Not only that, she arranged with the telephone central that all calls for the doctor, while she was absent from the office, should be given her at the cafe. The price of the lunch was advanced by the doctor. A part of the meal was coffee, apparently the first served from a new urn. She noticed something in the cup "that looked like a white powder." Relator lunched between 12:30 and 1 o'clock and returned immediately to the office. There, about 1:30, she was taken violently ill. It was diagnosed as a case of chemical poisoning, and the evidence requires a finding that the cause was in the coffee she drank from the new urn at the cafe. The industrial commission denied compensation, holding that relator had suffered an accidental injury but that it had not arisen out of or in the course of her employment. Not much if any question seems to have been made whether the event satisfied the statutory definition of "accident" in our workmen's compensation law and produced "at the time injury to the physical structure of the body." G. S. 1923, § 4326 (h).

1. As to whether there was in fact an accident within the meaning of the statutory definition just referred to, we are concluded by the affirmative finding. The opinion of two doctors established quite clearly that relator's illness was the result of chemical poisoning. There is no direct proof that chemical poisoning results at the time in injury to the physical structure of the body. We assume that to be a matter of common knowledge and that it would be surprising if there could be chemical poisoning without immediate or at least early injury to the human anatomy. But be that as it may, it is one of those things with respect to which the industrial commission may find the fact without special evidence. Here it has found that there was an accident, and that necessarily includes the element of resulting injury to the physical structure of the body.

There is nothing in the record which will permit us to disturb that finding.

2. The remaining question, whether the accident arose out of and in the course of the employment, the facts being undisputed, is a question of law with respect to which we find ourselves constrained to disagree with the industrial commission. Even though not in the office, the relator while at lunch was on her employer's business. She was where he directed her to be, and doing what he required her to do—waiting for telephone calls in close proximity to the office. The expected calls had to do with obstetrical cases soon to require the doctor's assistance. That the meal was for relator's refreshment did not take her out of the course of the employment any more than did the smoking of the cigarette which caused the injury in Kaletha v. Hall Merc. Co. 157 Minn. 290, 196 N. W. 261. That the accident arose in the course of the employment seems plain. It may not be quite so clear that it arose out of the employment. But that issue also we think must be resolved, as matter of law, for relator. Her luncheon that day was taken under unusual circumstances at the direction of the employer who furnished the money for that very purpose. His directions and her very proper acquiescence continued her employment through the noon hour and projected it into the restaurant where she lunched just as that of a traveling salesman may be continued through the night and into the hotel where he sleeps. Stansberry v. Monitor Stove Co. 150 Minn. 1, 183 N. W. 977, 20 A. L. R. 316. It was in following her employer's directions as to how she might best serve his interests that relator sustained the injury. So we hold that the injury arose out of, as well as in the course of, the employment.

There seems to be no dissent from the proposition that "the relation of employer and employee is not suspended, as a rule, during the noon hour, when the master expects, and expressly or by fair implication invites, the servant to remain upon the premises, in the immediate vicinity of the work." 18 R. C. L. 583. Thomas v. Wisconsin C. Ry. Co. 108 Minn. 485, 122 N. W. 456, 23 L.R.A.(N.S.) 954; Moore v. M. & St. L. R. Co. 123 Minn. 191, 142 N. W. 152, 143 N. W. 326; Riley v. Cudahy Packing Co. 82 Neb. 319, 117 N. W. 765;

Cleveland, C. C. & St. L. R. Co. v. Martin (Ind. App.) 39 N. E. 759; on rehearing, 13 Ind. App. 485, 41 N. E. 1051; Haller v. City of Lansing, 195 Mich. 753, 162 N. W. 335, L. R. A. 1917E, 324; Archibald v. Ott, 77 W. Va. 448, 87 S. E. 791, L. R. A. 1916D, 1013; Holt Lbr. Co. v. Industrial Comm. 168 Wis. 381, 170 N. W. 366. In the last case, it was held generally that "the relation of master and servant extends beyond the hours the servant is actually required to labor and in some instances to places other than the premises where the servant is employed." Vilter Mfg. Co. v. Industrial Comm. 192 Wis. 362, 212 N. W. 641. See also In re Sundine, 218 Mass. 1, 105 N. E. 433, L. R. A. 1916A, 318. It is not presence on the premises but continuation of the employment that is controlling in such cases.

The instant case is distinguishable from Maxa v. County of LeSueur, 168 Minn. 65, 209 N. W. 898, for there the employe, although injured while preparing his own lunch, was for the moment outside the scope of his employment. He was not where he was or doing what he was doing under the directions of his employer. In the instant case relator was precisely where her employer told her to be and doing what he told her to do in order to serve his interests. Her injury was a consequence of that very thing. It arose from a "risk connected with the employment." Novack v. Montgomery Ward & Co. 158 Minn. 495, 499, 198 N. W. 290. That other patrons of the restaurant were subjected to the same hazard is immaterial. The compensability of an injury is not prevented because alone of the fact that it arises from a hazard to which others, not employes, were also subject. As matter of law we hold that the accident to relator arose out of and in the course of the employment.

Order reversed with directions to allow compensation, and in this court relator may tax an attorney's fee of $75.