Mervin P. KIRCHNER, Respondent,

v.

COUNTY OF ANOKA and Home Insurance Company, Relators,

and

Iowa National Mutual Insurance Company, Respondent,

and

State Treasurer, as Custodian of the Special Compensation Fund, Relator.

No. C2-82-1560.

Supreme Court of Minnesota.

Nov. 10, 1983.

W.R. Pederson, Minneapolis, for relator Anoka County.

Thomas R. Jacobson, Hudson, Wis., for Iowa Nat. Mut., respondent-insurer.

Harold W. Schultz, II, Sp. Asst. Atty. Gen., St. Paul, for relator State Treasurer.

Thomas J. Lyons, St. Paul, for respondent Kirchner.

PETERSON, Justice.

This is a workers' compensation action brought by relator County of Anoka (county) and respondent Iowa National Mutual Insurance Company (Iowa National) seeking contribution and reimbursement from relator Home Insurance Company (Home) and relator State Treasurer as Custodian of the Special Compensation Fund (fund) for benefits paid to respondent Mervin P. Kirchner. Iowa National was the worker's compensation insurance carrier for the county on November 14, 1977, the date of Kirchner's first work-related accident during his employment with the county. Home was the insurance carrier for the county on February 15, 1979, the date of Kirchner's second accident.

The compensation judge denied the petition for contribution and reimbursement, finding that the 1979 accident caused no new injury. The Worker's Compensation Court of Appeals reversed, ordered Home to reimburse Iowa National for all benefits paid to Kirchner after February 15, 1979, and ordered the fund to reimburse Home for all benefits paid in excess of the statutory deductible.

The issues presented on appeal are: whether the court of appeals finding that a new injury occurred in 1979 was manifestly contrary to the evidence; whether the 1979 injury arose out of and in the course of employment; and the amount of and the proper insurer to pay compensation benefits after the 1979 injury.

From 1963 to November 14, 1977, Kirchner worked for the Anoka County Highway Department as a truckdriver and heavy equipment operator. On November 14, 1977, while he was working, Kirchner suffered an injury which resulted in a 15% permanent partial disability to his back. He received a lump sum payment from Iowa National for the 15% permanent partial disability, pursuant to Minn.Stat. § 176.101, subd. 3 (1982). In addition, Iowa National paid temporary total disability benefits during his hospitalization and recuperation period, pursuant to Minn.Stat. § 176.101, subd. 1 (1982). On June 15, 1978, Kirchner was registered as a physically impaired employee with the Minnesota Department of Labor and Industry.

Kirchner returned to work for the county as a part-time draftsman in October 1978. During this period, he received temporary partial disability benefits, pursuant to Minn.Stat. § 176.101, subd. 2 (1982), from Iowa National. On February 15, 1979, Kirchner was leaving work when his leg suddenly gave out as he was descending the interior staircase at the Anoka County Courthouse. Persons ascending the staircase occupied the only side with a handrail, so there was no handrail available to protect him from falling. He fell down three steps, striking his lower back and buttocks. Kirchner's leg had given out on prior occasions, but he had always been able to catch himself before he fell.

After the 1979 fall, Kirchner attempted to return to work for the county but was incapable of working sufficiently long hours. Finally, after another fall in June 1979, Kirchner was unable to return to work. Under a temporary order, Iowa Na-

tional paid temporary partial disability benefits while Kirchner was still working and has paid temporary total disability benefits since June 1979.

The compensation judge heard testimony in this case from three board-certified orthopedic surgeons. Two doctors testified that the 1979 fall caused new and additional permanent impairment to Kirchner's back. The third doctor attributed all of the permanent impairment to the 1977 accident, opining that the 1979 fall caused only a temporary impairment or aggravation of Kirchner's injuries. All three doctors agreed that the disability following the 1979 fall was substantially greater as a result of Kirchner's pre-existing condition.

■■■ 1. The court of appeals, setting aside a contrary finding of the compensation judge, found that Kirchner's fall on February 15, 1979, resulted in a new injury, causing additional permanent impairment of Kirchner's back. Resolution of conflicting medical opinions is the province of the court of appeals. *Fredenburg v. Control Data Corp.*, 311 N.W.2d 860, 863 (Minn. 1981). The issue whether there was a new injury is a question of fact. *Rohr v. Knutson Construction Co.*, 305 Minn. 26, 232 N.W.2d 233 (1975). Findings on questions of fact will not be disturbed unless manifestly contrary to the evidence or unless inferences from the evidence would clearly require reasonable minds to adopt a contrary conclusion. *Halverson v. Larrivy Plumbing & Heating Co.*, 322 N.W.2d 203, 205 (Minn.1982). Although the doctors in this case were not in full agreement, two doctors testified that the 1979 fall had resulted in new, permanent impairment of Kirchner's back. The court of appeals decision reflects an acceptance of this testimony. We, therefore, hold that the finding of a new injury as a result of the 1979 accident was not manifestly contrary to the evidence.

■■■ 2. Under the Minnesota Workers' Compensation Act, a compensable personal

injury means an injury "arising out of and in the course of employment * * *." Minn. Stat. § 176.011, subd. 16 (1982).[1] The "in the course of" requirement refers to the time, place, and circumstances of the injury. Although injuries received while coming to or going from work are not compensable, an exception is made for reasonable ingress to or egress from the employer's premises. *Nelson v. City of St. Paul,* 249 Minn. 53, 81 N.W.2d 272 (1957); *Simonson v. Knight,* 174 Minn. 491, 219 N.W. 869 (1928). Where, as here, the fall occurred on the interior staircase of the employer's place of business, as the employee was leaving work, the "in the course of" requirement is satisfied.

■ The "arising out of" requirement refers to the causal connection between the employment and the injury. This requirement requires a showing of some hazard that increases the employee's exposure to injury beyond that of the general public. *Miller v. Goodhue-Rice-Wabasha Citizens Action Council, Inc.,* 293 Minn. 454, 197 N.W.2d 424 (1972), held an injury arose out of the employment when a physically handicapped employee fell, because her leg suddenly "locked" as she was ascending a staircase on the employer's premises when returning from lunch. Similarly, in *Barlau v. Minneapolis-Moline Power Implement Co.,* 214 Minn. 564, 9 N.W.2d 6 (1943), a sufficient causal connection was found when an employee fell at his work station during an epileptic seizure. In this case, the staircase was located at Kirchner's place of employment, and the injury occurred when the public use of the only handrail required Kirchner to negotiate the steps without benefit of that protection. Thus, we hold that the requisite causal connection between the employment and the injury existed.

■ 3. The basic statute applicable in this case is Minn.Stat. § 176.131, subd. 1 (1982), which provides:

If an employee incurs personal injury and suffers disability that is substantially greater, because of a pre-existing physical impairment, than what would have resulted from the personal injury alone, the employer shall pay all compensation provided by this chapter, but he shall be reimbursed from the special compensation fund for all compensation paid in excess of 52 weeks of monetary benefits and $2,000 in medical expenses * * *.

This statute clearly applies, for all of the doctors who testified in this case agreed that Kirchner's disability following the 1979 fall was substantially greater because of his pre-existing physical impairment resulting from the 1977 fall.

The critical and difficult issue is what compensation is provided by the Workers' Compensation Act under the facts of this case. There is no dispute that Kirchner is totally unable to work because of his disability. He is, therefore, seeking temporary total disability benefits. Specifically at issue is the proper wage rate upon which to calculate these benefits, the proper insurer to pay these benefits, and the continuance of the temporary partial disability benefits that Kirchner was receiving prior to his 1979 accident.

The Workers' Compensation Court of Appeals found:

The employee's compensation rate subsequent to February, 1979 should be determined on the basis of his November, 1977 wages since the pre-existing condition resulting from the November, 1977 injury substantially contributed to his disability and the employee's benefits must be calculated on the wage rate which would provide him the greater recovery. The employee cannot be divested of his entitlement to benefits calculated on the November, 1977 injury due to a subsequent injury wherein he was working part-time and receiving temporary partial

---

1. For a useful compendium of our case law on this statute, see Bradt, *An Examination of the "Arising Out Of" and the "In the Course Of"* *Requirements Under the Minnesota Workers' Compensation Law,* 6 Wm. Mitchell L.Rev. 533 (1980).

disability benefits due to his prior November, 1977 injury.

While the court of appeals resolved this issue consistently with the workers' compensation law policy of reflecting loss in earning capacity due to work related injury, the approach is problematic. First, it is inconsistent to find a new injury in 1979 but award benefits at the 1977 wage rate under a statute using the language "daily wage at the time of injury." Second, and most important, the result is inconsistent with the policy of the second injury statute. Minn.Stat. § 176.131, subd. 1 (1982). The purpose of the statute is to encourage the employment of physically impaired persons. The result reached by the court of appeals must be analyzed in light of its impact on future cases. Unlike the present case, many cases arising under the second injury statute involve two employers, one at the time of the first injury and another at the time of the second injury. To hold a second employer who hires a physically disabled part-time employee liable for the statutory deductible of 52 weeks of benefits at the employee's full-time rate prior to the original disability would act as a significant deterrent to the employment of physically impaired persons. This outcome is directly contrary to the purpose of the second injury statute, and we reject the court of appeals decision as the appropriate resolution of this case.

The fund advances an alternative under which Kirchner would receive concurrent payments of temporary partial disability benefits at the 1977 wage rate and temporary total disability benefits at the 1979 wage rate. The temporary partial benefits would be fully paid by Iowa National, and the temporary total benefits would be paid by Home with reimbursement to Home from the fund for amounts over the statutory deductible.

This result is consistent with the language of the statute, the general compensatory policy of the workers' compensation law, and the policy of the second injury statute. An employee is entitled to receive temporary partial disability benefits, during the period of disability, at the rate of "66⅔ percent of the difference between the daily wage of the worker at the time of injury and the wage he is able to earn in his partially disabled condition." Minn.Stat. § 176.101 subd. 2 (1982). Iowa National has paid Kirchner benefits under this formula from the time of the 1977 injury calculated at the 1977 wage rate. If Kirchner had not been injured a second time, Iowa National would have been responsible for temporary partial disability benefits indefinitely. The period of disability from the first injury continues to this day. All of the doctors testified that the greater portion of Kirchner's disability was attributable to the 1977 accident. There is no unfairness in requiring Iowa National to continue to make the temporary partial disability payments that it would have had to make indefinitely if there had been no second injury.

An employee is also entitled to receive temporary total disability benefits, during the period of disability, at the rate of 66⅔ percent of the daily wage at the time of injury. Minn.Stat. § 176.101, subd. 1 (1982). Because of his pre-existing condition, Kirchner's 1979 fall resulted in a total inability to work. Consequently, he is entitled to receive temporary total disability benefits.

Employers will not be encouraged to employ physically impaired part-time workers, however, if they are held liable for benefits at a previous full-time rate in the event of a second injury. To achieve the purpose of the second injury statute, a second employer should be responsible for no more than benefits at the wage rate that that employer is paying. Though there was only one employer in this case, the same analysis applies to successive insurers.

Nothing in the statute requires that temporary partial disability benefits cease when temporary total disability benefits become payable as a result of a new injury.

The only argument made against a concurrent award is that an employee cannot be totally and partially disabled at the same time. The statutory definitions of the types of compensation, however, do not incorporate the plain, ordinary meaning of the words "partial" and "total" but depend on the effect of an injury on the employee's earning capacity. Kirchner had one injury in 1977 that partially reduced his earning capacity. His second injury resulted in a further reduction in his earning capacity that made him incapable of work. By awarding concurrent benefits for both injuries, the award addresses the total diminution of earning capacity experienced by Kirchner.

We hold that Iowa National must continue to pay temporary partial disability benefits at the 1977 wage rate. There will be no reimbursement from the fund to Iowa National, because these are benefits stemming from an unregistered, first injury. Concurrently, Home will pay temporary total disability benefits based on the 1979 part-time wage rate from June 1979 and will receive reimbursement for amounts over the statutory deductible from the fund.

The holding in this case is limited to those situations where, as a result of the first injury, the employee is forced to reduce his or her work time or income and is, therefore, eligible for temporary partial disability benefits. Employees who continue to be able to work full time at comparable wages after the first injury would not be eligible for a concurrent award of benefits.[2]

Affirmed in part, reversed in part, and remanded for computation of benefits to be paid by the insurers and the fund consistent with this opinion.

---

**2.** We are not unmindful that the court of appeals cited *Koski v. Erie Mining Co.,* 300 Minn. 1, 223 N.W.2d 470 (1973), in support of its decision, and the parties on appeal have cited *Koski* for their positions. We consider *Koski* to be inapplicable to the facts of this case. The issue there was the availability of apportionment of liability for benefits payable because of an employee's total disability resulting from the combined effects of three injuries. Here, however, there is no attempt to apportion responsibility for a single condition, but, rather, we concurrently award benefits due to two separate injuries.