Toni DYKHOFF, Respondent,

v.

XCEL ENERGY and CCMSI, Relators,

and

North Memorial Health Care, Intervenor.

No. A12–2324.

Supreme Court of Minnesota.

Dec. 26, 2013.

Michael G. Schultz, Sommerer & Schultz, P.L.L.C., Minneapolis, MN, for respondent.

James S. Pikala, Christine L. Tuft, Noelle L. Schubert, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, MN, for relators.

Jessica Syverson, Kris. A. Wittwer Law Firm, Roseville, MN, for intervenor.

## OPINION

GILDEA, Chief Justice.

Relator Toni Dykhoff fell and dislocated her left patella while attending a required training session at the general office of her employer, Xcel Energy. Dykhoff filed a claim for workers' compensation benefits. The compensation judge held a hearing, found that Dykhoff's injury did not arise out of and in the course of her employment, and denied Dykhoff's claim. Dykhoff appealed to the Workers' Compensation Court of Appeals (WCCA), which reversed the compensation judge. Because we conclude that the WCCA erred as a matter of law in concluding that Dykhoff's injury was compensable, we reverse the ruling of the WCCA and reinstate the decision of the compensation judge.

The facts in this case are largely undisputed. Toni Dykhoff, a 47–year–old journeyman electrician, began working at Xcel Energy on August 17, 2009. Her job duties included electronically monitoring power and transmission lines in Minnesota, North Dakota, and South Dakota. Her job was a desk position, and she usually worked out of Xcel's Maple Grove Service Center. Typically, Dykhoff wore jeans and other casual wear to work. Prior to her fall, Dykhoff had no history of knee problems, no problem walking, used no assistive devices, and walked with "a normal gait."

Dykhoff was instructed to attend a training session taking place on June 20, 2011, at Xcel's general office in downtown Minneapolis. Dykhoff was instructed to wear "dress clothes" for the training session, as was the custom for employees attending meetings at the general office. Dykhoff therefore arrived at the general office, on June 20, 2011, wearing a dress shirt and dress pants. She also wore shoes with two inch wooden heels. Apart from the general direction to wear "dress clothes," no one told Dykhoff what type of shoes to wear.

Dykhoff arrived at the general office at approximately 8:00 a.m. on June 20 and went through security, arriving at the lower-level meeting room at approximately 8:05 a.m. Upon exiting the elevator on the lower level, she placed her coat, purse, and computer bag on a bench and walked over to the hallway where the meeting room was located. Seeing no lights on and no

one in the hallway, she turned on the lights in a small conference room near the entrance to the hallway. Dykhoff then came back to the bench, picked up her coat, purse, and computer bag, and began to walk back towards the conference room to wait. Dykhoff testified that she was walking at a normal pace.

While walking back to the conference room, Dykhoff fell, landing on her buttocks with both feet extended in front of her. When Dykhoff hit the floor, her left leg was at an awkward angle, she "felt a pop in [her] left knee" and her "knee pop[ped] out of joint." Dykhoff described the floor she fell on as "slippery," "hard shiny linoleum" with a "highly polished surface." Dykhoff explained that she did not trip and that there was no possibility her leg gave out. Dykhoff acknowledged that immediately prior to her fall she had walked across the same stretch of floor without incident and that there was no incline where she fell, the floor was not wet, and there was no debris on the floor.

Shortly after Dykhoff's fall, a Facility Operations Manager for Xcel went to the lower level and found Dykhoff still laying on the floor, waiting for paramedics. The Facility Operations Manager confirmed that there was no debris on the floor and that the floor was dry. After paramedics took Dykhoff to the emergency room, the Facility Operations Manager and his colleague checked the floor and determined that it was shiny but not slippery. Additionally, the Facility Operations Manager and his colleague took pictures of the area that showed scuff marks on the floor near where Dykhoff fell. Dykhoff said that the scuff marks appeared to be where her feet slipped, and she confirmed that the marks were the same color as her wooden heels and were in a V shape, which was consistent with her description of her fall. Dykhoff was transported to North Memorial Medical Center, where she was treated for a left patellar dislocation.

Dykhoff filed a claim petition for workers' compensation benefits, and a compensation judge held a hearing on the claim. Prior to the hearing, the parties stipulated that all of the medical expenses at issue were related to Dykhoff's left knee injury, were reasonable and necessary, and were causally related to Dykhoff's fall. The parties also stipulated that Dykhoff's period of temporary total disability was one week and that her average weekly wage on the date of the injury was $1,416.55. The only issue contested at the hearing, therefore, was "whether [Dykhoff's] left knee condition is a compensable work injury" arising out of her work activity.

At the hearing, Dykhoff testified regarding her actions and injury on June 20, 2011, as described above. The Facility Operations Manager testified on behalf of Xcel. As part of his job, the Facility Operations Manager testified that he is "constantly throughout the whole [general office] building daily" and is "looking for things to make sure, especially at the [general office], make sure everything is clean and [ ] operable" and that "there's no safety issues or concerns." He further testified that the floor where Dykhoff fell is terrazzo flooring made of "chips of . . . marble, granite, and etc." He stated that the floor where Dykhoff fell is "mopped nightly by our contractors" and is stripped and waxed twice a year, most recently about 1 month before Dykhoff fell. Additionally, Xcel submitted documentation of testing on the floor performed by a third party after the fall, which showed that the "coefficient of friction," in other words, the slipperiness of the floor, was within Occupational Safety and Health Administration (OSHA) specifications.

Following the hearing, the compensation judge issued findings of fact and an order

denying and dismissing Dykhoff's claim. The compensation judge held that for an injury to be compensable, "the employee must show that her injury was caused by an 'increased risk'—a risk related to her work activity or environment that heightened the likelihood of an injury beyond the level of risk experienced by the general public." The compensation judge found that "[Dykhoff] walked across the area where she fell without incident just moments before the fall occurred;" "an equally plausible explanation for [Dykhoff's] fall [was her] shoes with 2 inch heels;" and "the floor where [Dykhoff] fell was highly polished, very clean, dry and flat." The compensation judge found that the evidence "fail[ed] to establish the floor where [Dykhoff] fell on June 20, 2011 was slippery," and "fail[ed] to establish [Dykhoff] was at any increased risk for falling due to the condition of the floor." Accordingly, because Dykhoff failed to establish that her injury was caused by an increased risk, the compensation judge determined that Dykhoff's injuries were not compensable.

The Workers' Compensation Court of Appeals reversed. *Dykhoff v. Xcel Energy & CCMSI*, 2012 WL 6592145 (Minn. WCCA Nov. 29, 2012). The WCCA considered three tests to determine whether Dykhoff's injury arose out of her employment: the increased risk test, under which the employee must show that she is exposed to a greater risk than the general public; the positional risk test, under which the employee need only show that her employer placed her in the position where she was injured; and the work-connection balancing test derived from *Bohlin v. St. Louis Cnty./Nopeming Nursing Home*, 61 Minn. Workers' Comp. Dec. 69 (WCCA 2000), *aff'd without opinion*, 621 N.W.2d 459 (Minn.2001). *Dykhoff*, 2012 WL 6592145, at *5–7. The WCCA concluded that the compensation judge

erred by exclusively applying the increased risk test because "the proper test is the 'work-connection' analysis laid out in *Bohlin*, and the 'arising out of' element must be balanced with the 'in the course of' element to determine compensability." *Id.* at *10. The WCCA concluded that "[t]he arising out of element may not be as strong as it would be in a case that clearly passes the increased risk test, but the in the course of element is strong enough to outweigh any deficiencies here." *Id.* at *11. Accordingly, the WCCA "reverse[d] the compensation judge's determination that the injury did not arise out of *and in the course [of]* the employment," relying in part on its conclusion that "the floor was certainly a contributing factor in [Dykhoff's] injury." *Id.* Xcel sought certiorari review.

On appeal, Xcel argues that the WCCA erred as a matter of law in applying the balancing test from *Bohlin* to assess whether Dykhoff's injury was compensable. Xcel also argues that the WCCA erred in substituting its findings of fact for those of the compensation judge. The WCCA is a "specialized agency of the executive branch, its members selected for their experience and expertise," *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54, 61 (Minn.1984), and is entrusted with deciding "all questions of law and fact arising under the workers' compensation laws of the state in those cases that have been appealed to the [WCCA]." Minn.Stat. § 175A.01, subd. 5 (2012). We will reverse the WCCA on review if we determine that it clearly and manifestly erred by rejecting findings supported by substantial evidence and substituting its own findings. *Gibberd v. Control Data Corp.*, 424 N.W.2d 776, 779–80 (Minn. 1988). But when interpreting statutory provisions within the Workers' Compensation Act, we apply a de novo standard of

review. *Reider v. Anoka–Hennepin Sch. Dist. No. 11,* 728 N.W.2d 246, 249 (Minn. 2007).

## I.

The question presented in this case is whether Dykhoff's injury is compensable under Minn.Stat. § 176.021 (2012). Section 176.021 provides that "[e]very employer is liable for compensation according to the provisions of this chapter and is liable to pay compensation in every case of personal injury or death of an employee arising out of and in the course of employment without regard to the question of negligence." Minn.Stat. § 176.021, subd. 1. The employee bears "[t]he burden of proof" to show that the injury "aris[es] out of and in the course of employment." *Id.* The statute defines "personal injury" as an "injury arising out of and in the course of employment ... while engaged in, on, or about the premises where the employee's services require the employee's presence as a part of that service at the time of the injury and during the hours of that service." Minn.Stat. § 176.011, subd. 16 (2012).

Interpreting section 176.021, we have consistently held that there are two distinct requirements for an injury to be compensable under the statute—the "arising out of" requirement and the "in the course of" requirement. *See e.g., Gibberd,* 424 N.W.2d at 780 (holding that where an employee was assaulted while on a meal break on a public street by a person with no nexus to his employment, the employee's injury and death did not arise out of and in the course of his employment). The "arising out of" requirement "connote[s] a

causal connection" and the "in the course of" requirement "refers to the time, place, and circumstances of the incident causing the injury." *Id.; see also Hanson v. Robitshek–Schneider Co.,* 209 Minn. 596, 599, 297 N.W. 19, 21 (1941). There is no dispute here that Dykhoff satisfies the "in the course of" requirement because her injury occurred within the time and space boundaries of her employment. The "arising out of" element, therefore, is the only element at issue in this case.

## A.

We have said that "[t]he phrase 'arising out of' means that there must be some causal connection between the injury and the employment." [1] *Foley v. Honeywell, Inc.,* 488 N.W.2d 268, 271 (Minn. 1992). This causal connection "is supplied if the employment exposes the employee to a hazard which originates on the premises as a part of the working environment, or ... peculiarly exposes the employee to an external hazard whereby he is subjected to a different and a greater risk than if he had been pursuing his ordinary personal affairs." *Nelson v. City of St. Paul,* 249 Minn. 53, 55–56, 81 N.W.2d 272, 275 (1957); *see also id.* at 56, 81 N.W.2d at 276 ("[I]f the injury has its origin with a hazard or risk connected with the employment, and flows therefrom as a natural incident of the exposure occasioned by the nature of the work, it arises out of the employment."). When "the employment creates a special hazard from which injury comes, then, within the meaning of the statute, there is that 'causal relation' between employment" and the injury. *Hanson,* 209 Minn. at 599, 297 N.W. at 21; *see*

1. We have been clear, however, that causation "need not embrace direct and proximate causation as for a tort," *Nelson v. City of St. Paul,* 249 Minn. 53, 55–56, 81 N.W.2d 272, 275 (1957), and that the employee need not prove negligence to receive compensation under the Workers' Compensation Act. *Fogarty v. Martin Hotel Co.,* 257 Minn. 398, 402, 101 N.W.2d 601, 604 (1960).

also *Olson v. Trinity Lodge No. 282*, 226 Minn. 141, 147–48, 32 N.W.2d 255, 259 (1948) (concluding that an employee's injuries arose out of his employment when "as an incident and as an obligation of his employment, [he] was exposed to the risk of being upon an icy sidewalk constituting a part of the working premises"); *Barlau v. Minneapolis–Moline Power Implement Co.*, 214 Minn. 564, 578–79, 9 N.W.2d 6, 13 (1943) (holding that an employee whose epilepsy contributed to his fall onto hazardous equipment at work was entitled to compensation).

For example, in *Foley*, we held that the employee's injury arose out of her work because her exposure to hazardous conditions in her employer's parking ramp led to her sexual assault and murder. *Foley*, 488 N.W.2d at 272. Similarly, in *Hanson*, we held that an employee's injury arose out of his work because his employment exposed him to the hazard of a high-crime area at night, leading to his assault and murder. *Hanson*, 209 Minn. at 597–99, 297 N.W. at 20–21. Likewise, in *Nelson*, we held that an employee's injury, caused when she was struck by a ball that a child on the playground had batted, arose out of her work because her employment as a teacher exposed her to the hazard of being hit by playground toys. *Nelson*, 249 Minn. at 54–56, 81 N.W.2d at 275–76. Dykhoff does not argue that her employment exposed her to any type of special hazard such as was at issue in *Foley, Hanson* and *Nelson*.

Dykhoff contends, instead, that she was injured while walking from one room to another at her workplace. The "arising out of" requirement can be satisfied even when the workplace condition connected to the injury is not obviously hazardous. For example in *Kirchner v. County of Anoka*, 339 N.W.2d 908, 910 (Minn.1983), the employee was injured while walking down the stairs at work. Many workplaces have stairways and there is nothing inherently dangerous or risky about requiring employees to use them. But we recognized in *Kirchner* that if there is something about the stairway or other neutral condition that "increases the employee's exposure to injury beyond that" the employee would face in his or her everyday non-work life, an injury causally connected to that condition could satisfy the "arising out of" requirement. *Kirchner*, 339 N.W.2d at 911. There, we concluded that the employee's injury arose out of his employment because he had to "negotiate the steps without the benefit of" a handrail. *Id.* Without the protection of the handrail, the employee was at an increased risk of injury and we held that the "the requisite causal connection between the employment and the injury existed." *Id.*

In this case, in contrast to *Kirchner*, Dykhoff did not prove that her workplace exposed her to a risk of injury that was increased over what she would face in her everyday life. Dykhoff argued that she fell because the floor on which she was walking was slippery. But the compensation judge found as a factual matter that there was nothing hazardous about the floor on which Dykhoff was walking at the time she fell. Indeed, it is undisputed that the floor Dykhoff crossed before falling was "very clean, dry and flat." And the compensation judge did "not adopt[ ] the 'slippery floor' theory urged by [Dykhoff]."

The compensation judge rejected Dykhoff's "slippery floor" theory for several reasons, including the testimony of Xcel's Facility Operations Manager regarding his inspection of the floor soon after the fall, the fact that Dykhoff walked across the floor without incident immediately prior to her fall, and the uncontroverted evidence that the floor was clean and dry. The compensation judge also found that the

shoes Dykhoff chose to wear were an equally plausible explanation for Dykhoff's fall. In addition to the evidence specifically cited by the compensation judge, the record shows that the floor was cleaned nightly with industry-standard cleaning products and tests performed on the floor indicated that it met OSHA guidelines for slipperiness.[2]

Our review of the record confirms that the evidence supports the compensation judge's finding that "[t]he preponderance of evidence fails to establish the floor where [Dykhoff] fell on June 20, 2011 was slippery." This finding therefore is not clearly erroneous. *See O'Rourke v. N. Star Chems. Inc.*, 281 N.W.2d 192, 194 (Minn.1979) (upholding compensation judge's findings on "arising out of element," noting that "[w]hether ... there

was ... a causal relation between [the employee's] employment and his death was a fact question").

Without any proof that something about the floor increased her risk of injury, we hold that Dkyhoff did not meet her burden to prove that her injury arose out of her employment.[3]

## B.

■■■ Notwithstanding the compensation judge's finding that the floor was not slippery, Dykhoff argues that her injury is compensable because her "employment placed her in a particular place at a particular time exposing her to a neutral risk ... existing on [Xcel's] premises." Justice Page's dissent also urges adoption of a positional risk test in this case.[4] We have

2. Justice Page's dissent ignores all of this evidence, characterizing our decision solely in terms of the shoes Dykhoff was wearing when she fell. But our precedent defining the limited scope of appellate review does not leave room for an unsupported contention of pretense or permit the dissent to substitute its judgment for the compensation judge's factfinding where, as in this case, substantial evidence supports those findings. *See Hengemuhle*, 358 N.W.2d at 59 (noting that "the basic factfinding [is left] to the compensation judge who presides at the evidentiary hearing").

3. Justice Page reaches a different result, arguing that we have found that injuries arose out of employment without regard to the existence of an increased risk of injury. This argument misreads our past decisions. For example, in *Bookman v. Lyle Culvert & Road Equipment Co.*, 153 Minn. 479, 190 N.W. 984 (1922), and *Locke v. County of Steele*, 223 Minn. 464, 27 N.W.2d 285 (1947), we applied the street risk doctrine, which is relevant when an employee is "engaged in his employer's service in a duty calling him upon the street." *Bookman*, 153 Minn. at 481, 190 N.W. at 984. This doctrine does not require the employee to show that she was exposed to a different or greater risk than the general public because it was developed out of recognition of the "perils commonly associated

with travel along the street" that an employee may be compelled to face as part of the employment. 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 6.05 (2012). But the street risk doctrine has no application to an injury that occurred within a secured area on the employer's premises, as Dykhoff's injury did here. In addition, "[e]ach case must be determined from its own facts." *Kaletha v. Hall Mercantile Co.*, 157 Minn. 290, 293, 196 N.W. 261, 262 (1923). For this reason, our decision in *Krause v. Swartwood* is inapplicable. 174 Minn. 147, 218 N.W. 555 (1928). There, the employee was injured "under unusual circumstances" due to "chemical poisoning." *Id.* at 148–49, 218 N.W. at 556.

4. Some jurisdictions have found an injury compensable for workers' compensation purposes based on the positional risk or "but for" test. *See, e.g., Milledge v. Oaks*, 784 N.E.2d 926, 932–33 (Ind.2003) (holding that an employee's injury was compensable because "[t]he injury would not have occurred but for the fact that the conditions and obligations of her employment placed [the employee] in the parking lot where she was injured"); *Logsdon v. Isco Co.*, 260 Neb. 624, 618 N.W.2d 667, 674–75 (2000) (holding that an employee's injury from an unexplained fall was compensable under the positional risk doctrine). The

declined to "make the employer an insurer against all accidents that might befall an employe[e] in his employment." *Auman v. Breckenridge Tel. Co.*, 188 Minn. 256, 258, 246 N.W. 889, 890 (1933). Accordingly, we require more to satisfy the "arising out of" requirement in section 176.021, subdivision 1, than simply an injury occurring at work. *See Gibberd*, 424 N.W.2d at 780 (noting that the "arising out of" requirement "connote[s] a causal connection" and the "in the course of" requirement "refers to the time, place, and circumstances of the incident causing the injury."); *see also Blanchard v. Koch Ref. Co.*, 282 N.W.2d 495, 496 (Minn.1979) (finding that employee's heart attack while at work was not compensable because there was no proof of a causal connection between employment and the injury); *Stibbs v. Nw. Airlines, Inc.*, 277 Minn. 248, 252, 152 N.W.2d 318, 321 (1967) (same). Dykhoff's argument collapses the "arising out of" requirement into the "in the course of" requirement. But we must give effect to both prongs of the statute. *See* Minn.Stat. § 645.17(2) (2012) (noting that "the legislature intends the entire statute to be effective").[5] Dykhoff also argues that we

---

positional risk test provides that "an injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed claimant in the position where he was injured." *Milledge*, 784 N.E.2d at 931 (citing 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 3.05 (2002)).

As illustrated by these cases, under the positional risk test, an employee's injuries may arise out of her employment simply because she was engaged in work at the time of her fall. Under this analysis, the "arising out of" prong collapses into the "in the course of" prong because the employee need only prove that the injury occurred while she was engaged in work, in other words "in the course of employment," to qualify for compensation under Minn.Stat. § 176.021, subd. 1. The "arising out of" prong is thereby rendered superfluous and ineffective, a result that is antithetical to our well-established case law holding that "[a] statute should be interpreted, whenever possible, to give effect to all of its provisions; 'no word, phrase, or sentence should be deemed superfluous, void, or insignificant.' " *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000) (quoting *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999)); *see also* Minn.Stat. § 645.16 (2012) ("Every law shall be construed, if possible, to give effect to all its provisions."). As the Supreme Court of North Dakota recognized, the positional risk test is problematic because it "negate[s] the necessity of showing the 'arising out of' prong altogether.... If merely being at work was sufficient to show causation, the legislature need not have required the 'arising out of'

test." *Fetzer v. N.D. Workforce Safety & Ins.*, 815 N.W.2d 539, 543 (N.D.2012) (omission in original) (analyzing a workers' compensation statute that parallels Minnesota's statute).

5. In his dissent, Justice Lillehaug agrees that the "arising out of" and "in the course of" requirements are distinct and must each be satisfied. He nonetheless substitutes his judgment on a fact question for that of the factfinder and decides as a matter of law that the requisite causal connection exists because Dykhoff fell on a floor within the employer's exclusive control, because she wore shoes that she decided complied with the "dress clothes" direction, or because there was an interaction between the floor and the shoes. We disagree. Although the proximate cause tort standard is not the test, our precedent requires that Dykhoff show that her employment was "the predominant factor in peculiarly exposing [her]-in a different manner and in a greater degree than if [she] had been pursuing [her] ordinary personal affairs-to a hazard," and that hazard "may or may not be peculiar to or exclusively associated with the employment." *Breimhorst v. Beckman*, 227 Minn. 409, 421–22, 35 N.W.2d 719, 728 (1949). The employer's exclusive control over the floor on which Dykhoff fell simply restates the undisputed fact that she fell at work. It does not demonstrate that her employment as a journeyman electrician exposed Dykhoff to a hazard of a different or greater degree than she might have faced, for example, walking on a clean, flat, dry public sidewalk abutting Xcel's facility. Nor do the shoes Dykhoff wore demonstrate the existence of a hazard. Whether she wore flat shoes or

should find her injury compensable based on the analysis the WCCA used. The WCCA, relying on a balancing test first articulated in *Bohlin v. St. Louis Cnty./Nopeming Nursing Home*, 61 Minn. Workers' Comp. Dec. 69 (WCCA 2000), *aff'd without opinion*, 621 N.W.2d 459 (Minn.2001), concluded that the increased risk test is not the exclusive test to be used in a case where the reason for the injury "is truly unexplained." *Dykhoff*, 2012 WL 6592145, at *8–10. In *Bohlin*, the WCCA concluded that "[a]lthough the 'arising out of' and 'in the course of' requirements express two different concepts, in practice these requirements are not independent, but are elements of a single test of work-connection." *Bohlin*, 61 Minn. Workers' Comp. Dec. at 79 (citation omitted) (internal quotation marks omitted). Under the *Bohlin* test, a "minimum level of work-connection" can be established "if the 'course' test is weak but the 'arising' test is strong," or, "if the 'arising' test is weak and the 'course' factor is strong." *Id.* If, however, "both the 'course' and 'arising' elements are weak, the minimum connection to the employment will not be met." *Id.*

We reject the *Bohlin* test because it fails to give effect to all parts of Minn.Stat. § 176.021, subd. 1. *See* Minn.Stat. §§ 645.16, 645.17 (2012). The plain language of section 176.021 requires the employee to demonstrate that an injury "arises out of and in the course of" the employment.[6] The work-connection test, in contrast, would allow a court to consider these statutory elements as alternatives— that is, to balance the two factors against each other in a fashion that could relieve the employee of the burden of proof on one element if there is strong evidence of the other element.

Indeed, as the WCCA ruled in this case, even if there are "deficiencies" in the employee's proof of the "arising out of element," the employee may still receive compensation. The workers' compensation statute, however, requires that the employee bear the "burden of proof" on both the "arising out of" and the "in the course of" elements and does not leave room for a test that relaxes that burden simply because the injury occurred during the work day or on the employer's premise. *See Gibberd*, 424 N.W.2d at 784 (declining to adopt an expansive interpretation that would "be antithetical to [the] basic pur-

shoes with any heel, Dykhoff's employment did not expose her to a hazard of a different or greater degree than she would have faced when walking on any public clean, flat, dry surface in similar shoes. Indeed, there is no evidence in the record that suggests Dykhoff faced any peculiar or different hazard as a journeyman electrician when walking in Xcel's facilities, whether at Xcel's general office or at the Maple Grove facility. *See Bloomquist v. Johnson Grocery*, 189 Minn. 285, 286, 249 N.W. 44, 44 (1933) ("The evidence disclosed merely that the employment was in a grocery store and that when [the employee went] to wait on a customer a bug flew into his eye[.] ... There is no evidence that bugs ... infested the store.... [T]here is no basis in the evidence for finding that this accident ... arose out of the employment.").

6. Justice Page argues that because the Legislature defined an "[o]ccupational disease" as one "arising out of and in the course of employment peculiar to the occupation in which the employee is engaged and due to causes in excess of the hazards ordinary of employment," Minn.Stat. § 176.011, subd. 15 (2012), we err by applying the increased risk test to all personal injuries suffered by employees. This view is inconsistent with our precedent, which for decades has consistently applied the increased risk test. *See Auman*, 188 Minn. at 260, 246 N.W. at 890 ("The accident must be caused by some risk inhering in or incident to the employment as distinguished from a risk or hazard to which all are equally exposed."). We decline the dissent's invitation to depart from our precedent.

pose [of the workers' compensation system] by converting [it] into a compulsory health and accident insurance scheme by which every employer would be made liable for all injuries sustained by employees from the time of leaving for, and returning home from, work"). Because the work-connection test renders either the "arising out of" or the "in the course of" element superfluous and a portion of the statute ineffective, we reject the *Bohlin* test.

In sum, the compensation judge found as a factual matter that Dykhoff did not prove that her employer, Xcel, exposed her to a condition that placed her at an increased risk of injury beyond what she would experience in her non-work life. The compensation judge's findings are supported by the record. We therefore hold that Dykhoff did not meet her burden to prove that her injury arose out of her employment, as required in Minn.Stat. § 176.021, subd. 1. We reverse the decision of the Workers' Compensation Court of Appeals and reinstate the decision of the compensation judge.

Reversed.

PAGE, Justice (dissenting).

The court's decision to deny relator Toni Dykhoff's claim for workers' compensation is based on the flawed conclusion that she must show that her workplace exposed her to an increased risk of injury. Such a conclusion is not grounded in our case law, is contrary to the plain language of Minn. Stat. § 176.021, subd. 1 (2012), defies fundamental principles of fairness, and will significantly reduce employees' ability to recover workers' compensation benefits in the State of Minnesota for the large category of workplace injuries in which the source of the injury is unknown. Finally, the court's decision will upset the apple cart that is our delicately balanced work-

ers' compensation system. For these reasons, I respectfully dissent.

### I.

The Minnesota Workers' Compensation Act was originally passed in 1913. Act of April 24, 1913, ch. 467, 1913 Minn. Laws 675. It was "designed to give workers immediate recovery for their injuries suffered while on the job, without regard to the common law's 'three evil sisters,' contributory negligence, the fellow-servant rule, and assumption of risk." *Foley v. Honeywell,* 488 N.W.2d 268, 271 (Minn. 1992); *see* 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 1.03 (2012) (explaining that the assessment of liability for workers' compensation benefits "is not a matter of assessing blame"). The Act was intended to "provid[e] a measure of security to workers injured on the job, with the burden of that expense considered a proportionate part of the expense of production." *Franke v. Fabcon, Inc.,* 509 N.W.2d 373, 376 (Minn.1993).

The Act provides that employers must compensate employees "in every case of personal injury or death of an employee arising out of and in the course of employment." Minn.Stat. § 176.021, subd. 1. The employee has the burden of showing that the "arising out of" and "in the course of" requirements are independently satisfied. *See id.; Gibberd v. Control Data Corp.,* 424 N.W.2d 776, 780 (Minn. 1988). We have interpreted the "arising out of" requirement as connoting a "causal connection" between the injury and the employment, and the "in the course of" requirement as referring to the "time, place, and circumstances of the incident causing the injury." *Gibberd,* 424 N.W.2d at 780.

Here, there is no dispute that Dykhoff was injured "in the course" of her

employment because she fell while at the work premises during the work day. *See Gibberd,* 424 N.W.2d. at 780. The parties' disagreement centers on whether Dykhoff suffered an injury "arising out of" her employment. Therefore, as a threshold question, we must consider the meaning of the language "arising out of" in Minn.Stat. § 176.021, subd. 1, to determine what Dykhoff must show in order to satisfy that requirement.

In determining whether an employee suffers an injury "arising out of" employment for the purposes of a workers' compensation claim, courts generally employ one of two doctrines: the "increased risk doctrine" or the "positional risk doctrine." *See* 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 3.03–.05 (2012). Under the increased risk doctrine, an injury "arises out of" employment if the employee shows that the injury was caused by an increased risk connected to employment. *Id.* § 3.03. Jurisdictions applying the increased risk doctrine differ as to whether the employee must show that the risk is unique to the employment. *Id.* § 3.04. In contrast, under the positional risk doctrine, an employee satisfies both the "arising out of" and "in the course of" requirements without regard to risk "if [the injury] would not have occurred *but for* the fact that the conditions and obligations of the employment placed [the employee] in the position where he or she was injured." *Id.* § 3.05. The positional risk doctrine is most commonly applied to situations in which an employee is injured by some "neutral force" that is "neither personal to the [employee] nor distinctly associated with the employment." *Id.*

Relying on our case law, the court applies the increased risk doctrine with respect to Dykhoff's claim, holding that the "arising out of" requirement in Minn.Stat. § 176.021, subd. 1, can only be satisfied by a showing that Dykhoff's injury was caused by a risk connected to employment that was more severe than what she would otherwise face in a non-work setting. Applying that doctrine, the court concludes that Dykhoff's injuries are not compensable because she "did not prove that her workplace exposed her to a risk of injury that was increased over what she would face in everyday life."

But contrary to the court's analysis, our case law does not compel application of the increased risk doctrine. In fact, on many occasions we have awarded benefits to employees without regard to any showing that the employment subjected the employee to an increased risk of injury.

For example, when an employee's injury is the result of a "street risk," we have generally held that the employee is entitled to workers' compensation benefits without requiring any showing of "increased risk" connected to employment. In *Bookman v. Lyle Culvert & Road Equipment Co.,* the employee was injured while crossing a street to mail her employer's letters. 153 Minn. 479, 480, 190 N.W. 984, 984 (1922). We held that the injury was compensable, stating that if the employee is "engaged in his employer's service in a duty calling him upon the street . . . [the injury] arises as a matter of law out of his employment, *although others so employed, or the public using the streets, are subject to such risks." Id.* at 481, 190 N.W. at 984 (emphasis added). In *Locke v. County of Steele,* we similarly awarded benefits to an employee who sustained an injury after falling on a sidewalk. 223 Minn. 464, 466–70, 27 N.W.2d 285, 286–88 (1947). We emphasized that the "true test" in determining whether the injury was compensable under the Act was the employee's "presence at a place where, and during the time when, her services

were required to be performed." *Id.* at 469, 27 N.W.2d at 288 (emphasis omitted).

We have similarly permitted the award of benefits without regard to an increased risk of injury in situations in which an employee is injured while on break during the workday. In *Lassila v. Sears, Roebuck & Co.,* we held that an employee's injury that occurred during an unpaid lunch break in the employer's cafeteria was compensable because the lunch break "is a period of activity instrumental to employment." 302 Minn. 350, 350, 224 N.W.2d 519, 519 (1974). In *Krause v. Swartwood,* we held that the employee's injury that occurred during a lunch break "arose out of" the employment because it was "in following her employer's directions" to attend the work-related lunch "that [she] sustained the injury." 174 Minn. 147, 149, 218 N.W. 555, 556 (1928). And in *Sweet v. Kolosky,* we concluded that an employee's injury—sustained when she fell on a public sidewalk while returning from an off-premises coffee break—was compensable because her departure from the premises was "necessary in order to exercise a right or privilege granted as part of the employment agreement." 259 Minn. 253, 256, 106 N.W.2d 908, 910–11 (1960). In not one of these cases did we condition an employee's award on the showing of an increased risk connected to employment.

When the court's decision is viewed against this case law, the irony is palpable. How can we, on the one hand, award benefits to employees who are injured off of the work premises or during a work break without regard to an increased risk of injury and, on the other hand, deny benefits to Dykhoff—an employee who was injured within her employer's general office during work hours while engaged in work duties she had been specifically instructed to perform? I see no justification for placing an additional burden of proof on employees when they are injured in circumstances most connected to their employment. Such an approach is inconsistent with our precedent and, as noted, defies fundamental principles of fairness.

The only reasonable explanation I can glean for this contradiction is that the court deems Dykhoff an undeserving plaintiff because she wore shoes with two-inch heels to work the day she was injured.[1] Such considerations have no place in the no-fault workers' compensation system that Minnesota has adopted. *See* Minn. Stat. § 176.021, subd. 1 (holding employers liable to pay compensation "in every case of personal injury . . . without regard to the question of negligence"). The court tries, as did the compensation judge, to mask its true rationale by pretending there is no causal connection between Dykhoff's injury and her employment. That pretense ignores the undisputed facts in the record before us. Those facts, as found by the compensation judge and relied on by the court, do not support the conclusion that there is no causal connection between Dykhoff's injury and her employment. Nor do those facts suggest that Dykhoff's injury did not "arise out of" her employment. What those facts do show when the correct test is applied is that her injury did arise out of her employment with Xcel. The only fact that could have remotely disqualified Dykhoff from workers' compensation in this case is the fact that Dykhoff wore heels to work that day. And that fact can only disqualify her from

---

1. It appears that this fact was central to the compensation judge's determination that Dykhoff was disqualified from receiving workers' compensation benefits as evidenced by the compensation judge's finding that the shoes Dykhoff chose to wear were an equally plausible explanation for the fall.

being covered if the wrong standard is applied.

The court warns against an expansive interpretation of the "arising out of" requirement, which it contends will convert the workers' compensation system into "a compulsory health and accident insurance scheme by which every employer would be made liable for all injuries sustained by employees from the time of leaving for, and returning home from, work." *Gibberd*, 424 N.W.2d at 784. The court's fears are unfounded. Allowing Dykhoff to recover for her work-related injuries here will not ensure that every employee injured at work during work hours recovers under the system. That has not been the case in the past and will not be the case in the future. For example, it has always been the case that employees who, while at work, engaged in horseplay, frolic, or other activity not associated with their work responsibilities are not entitled to collect workers' compensation benefits. *Kerpen v. Bill Boyer Ford, Inc.*, 305 Minn. 47, 48, 232 N.W.2d 21, 22 (1975) (denying compensation to used-car salesman injured by co-worker's "amateur chiropractic" massage); *Cunning v. City of Hopkins*, 258 Minn. 306, 317–21, 103 N.W.2d 876, 884–86 (1960) (awarding benefits to an employee injured while engaging in "horseplay," but narrowing eligibility to employees whose injury resulted from horseplay that was part of the working environment, the hazard of which could be reasonably anticipated by the employer); *Kaselnak v. Fruit Dispatch*, 205 Minn. 198, 200, 285 N.W. 482, 483 (1939) (denying compensation to employee who "departed from the course and scope of his employment and voluntarily engaged upon a course of conduct and incurred risks which cannot reasonably be said to have been contemplated in the employment"); *Kayser v. Carson Pirie Scott & Co.*, 203 Minn. 578, 581, 282 N.W. 801, 803 (1938) ("[W]hen the employe[e] is engaged solely in the furtherance of his own personal mission or a frolic, he is not acting in the course of his employment and must himself bear the attendant risks of his personal venture.").

Sadly, in the process of denying benefits to this employee, the court overturns nearly 96 years of precedent in a way that will burden employees, employers, and the workers' compensation system as a whole. Increased tort litigation will force employees to incur "excessive legal charges which might otherwise severely deplete funds badly needed by the employee and his or her dependents." *Kahn v. State, Univ. of Minn.*, 327 N.W.2d 21, 24 (Minn.1982). Those added costs will also be borne by employees. The citizens of this state will bear costs when the "disabled victims of industry" are thrown on "private charity or public relief." *Kline v. Berg Drywall, Inc.*, 685 N.W.2d 12, 21 (Minn.2004) (citation omitted). At the same, employers will be exposed to tort liability in the form of "negligence suits likely to produce large verdicts," *Foley*, 488 N.W.2d at 271, when injured employees who would have otherwise been precluded from bringing a tort action for damages against their employer seek damages in court. *Stringer v. Minn. Vikings Football Club, LLC*, 705 N.W.2d 746, 754 (Minn.2005). Thus, by its decision in this case, the court insures that the Legislature's intent "to assure the quick and efficient delivery of indemnity and medical benefits to injured workers at a reasonable cost to employers" subject to the act is frustrated. Minn.Stat. § 176.001 (2012).

In my view, we should apply the positional risk doctrine to claims such as Dykhoff's and award benefits if the "conditions and obligations of employment placed [Dykhoff] in the position where ... she was injured." This doctrine is consistent with the plain language of Minn.Stat.

§ 176.021, subd. 1, and best fulfills the Act's central purpose of providing a measure of security to workers by allowing "immediate recovery for their injuries suffered while on the job." *Foley*, 488 N.W.2d at 271. In contrast, the court's decision strips workers of security by applying a doctrine that will result in the categorical denial of workers' compensation benefits for any injury in which the source of the harm is unknown, including unexplained falls. *See* 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 7.04[1][a] (2012) (explaining that, with respect to injuries in which the source of harm is unknown, "there is no way in which an award can be justified as a matter of causation theory" except by application of the but-for reasoning underlying the positional risk doctrine). The court's narrow interpretation of the "arising out of" requirement of Minn.Stat. § 176.021, subd. 1, cannot be squared with the underlying purposes of the Act.[2]

Additionally, interpreting Minn.Stat. § 176.021, subd. 1, as requiring Dykhoff to show an increased risk of injury is inconsistent with the fact that the Legislature specifically required a showing of increased risk for the limited category of occupational-disease injuries. *See* Minn. Stat. § 176.011, subd. 15 (2012) (defining occupational disease as a disease "arising out of and in the course of employment peculiar to the occupation in which the employee is engaged and due to causes in excess of the hazards ordinary of employment" and excluding "diseases of life to which the general public is equally exposed outside of employment"). The court violates our canons of statutory interpretation by applying this type of "increased risk" statutory language to *all* types of "person-

al injury" under Minn.Stat. § 176.021, subd. 1. *See Rohmiller v. Hart*, 811 N.W.2d 585, 590 (Minn.2012) ("We cannot add words or meaning to a statute that were intentionally or inadvertently omitted."). Had the Legislature intended that this additional burden apply to *all* types of personal injury, it knew how to and could have easily done so.

The court rejects the positional risk test on the ground that it renders the "arising out of" prong in Minn.Stat. § 176.021, subd. 1, superfluous. But the court is mistaken. The positional risk test gives effect to both the "arising out of" and "in the course of" requirements because the employee cannot recover unless she can show that the injury would not have occurred but for the "conditions *and* obligations" of employment. 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 3.05 (2012) (emphasis added). In other words, in addition to showing that the injury occurred within the period of employment at a place where the employee may reasonably be (the "conditions" of employment), the employee must also show that the injury occurred while the employee is *engaged in an employment-related responsibility* (the "obligations" of employment). *See Carey v. Stadther*, 300 Minn. 88, 92, 219 N.W.2d 76, 78 (1974) ("An injury arises out of the employment if it arises out of the nature, conditions, *obligations or **incidents** of the **employment**;* in other words, out of the employment looked at in any of its aspects.") (emphasis added) (citation omitted). If Dykhoff can satisfy these requirements, her injury is compensable under Minn.Stat. § 176.021, subd. 1.

---

**2.** This view is supported by the fact that a majority of jurisdictions apply the positional risk doctrine to unexplained fall cases. *See* 1 Arthur Larson & Lex K. Larson, *Larson's*

*Workers' Compensation Law* § 7.04[1][a] (2012); *see also Fetzer v. N.D. Workforce Safety & Ins.*, 815 N.W.2d 539, 547 (N.D.2012) (Maring, J., dissenting) (citing cases).

## II.

Applying the positional risk test here, I would conclude that Dykhoff satisfied her burden of showing that she suffered an injury "arising out of and in the course of [her] employment" under Minn.Stat. § 176.021, subd. 1. First, as discussed, the parties do not dispute that Dykhoff's injury occurred "in the course of" her employment because she fell during the work day while at her employer's headquarters. Second, Dykhoff suffered an injury "arising out of" her employment because, at the time her injury occurred, she was walking to attend a mandatory computer training session and was therefore engaged in work duties she had been specifically instructed to perform. Because Dykhoff has shown that she satisfies both the "arising out of" and "in the course of" requirements of Minn.Stat. § 176.021, subd. 1, her injuries are compensable.

I respectfully dissent.

STRAS, Justice (dissenting).

I join the dissent of Justice Page.

LILLEHAUG, Justice (dissenting).

In dissenting, I reach the same conclusion as the dissent of Justice Page, joined by Justice Stras, but by an alternative route.

First, I agree with the majority that the balancing test applied by the Workers' Compensation Court of Appeals is inconsistent with our precedent. As the majority recognizes, the "arising out of" requirement and the "in the course of" requirement in the Workers' Compensation Act, Minn.Stat. § 176.021, subd. 1 (2012), are distinct requirements, each of which must be satisfied.

Second, as to the "arising out of" requirement, I agree with the majority that the cases of *Nelson v. City of St. Paul,* 249 Minn. 53, 81 N.W.2d 272 (1957), and *Foley v. Honeywell, Inc.,* 488 N.W.2d 268 (Minn. 1992), require some causal connection between the injury and the employment. Such a connection is supplied if the employment exposes the employee to a hazard that originates on the premises as a part of the working environment. Under *Nelson,* the causal connection need not be direct or proximate, and no proof of employer negligence is necessary. "[I]t is enough that injury follows 'as a natural incident of the work ... as a result of the exposure occasioned by the nature of the employment.'" *Hanson v. Robitshek–Schneider Co.,* 209 Minn. 596, 599, 297 N.W. 19, 21 (1941) (quoting *Novack v. Montgomery Ward & Co.,* 158 Minn. 495, 498, 198 N.W. 290, 292 (1924)).

Third, I agree with, and emphasize, the majority's acknowledgment that the "arising out of" requirement can be satisfied even when the injury is causally connected to a condition in the workplace that is not obviously hazardous. *See Kirchner v. Cnty. of Anoka,* 339 N.W.2d 908, 911 (Minn.1983) (awarding benefits to an employee who was injured while descending a courthouse stairway, even though the staircase was also used by the public).

Fourth, I agree with the majority that "[t]he facts in this case are largely undisputed." Given that the facts are largely undisputed, we are left with a question of law, which we consider de novo, *Reider v. Anoka–Hennepin Sch. Dist. No. 11,* 728 N.W.2d 246, 249 (Minn.2007). Our law must be applied to the following undisputed facts:

1. On June 20, 2011, the employer required employee Toni Dykhoff to be present for training at the employer's headquarters in downtown Minneapolis.

2. Normally, in the course of her employment in Maple Grove, Dykhoff

wore jeans and casual attire. For the training at the headquarters, the employer directed her to wear "dress clothes."

3. To comply with the employer's "dress clothes" direction, Dykhoff wore a dress shirt, dress pants, and shoes with 2–inch wooden heels.

4. The training area in the headquarters premises to which Dykhoff was directed was behind security; in other words, not open to the general public and under the exclusive control of her employer.

5. The floor on which Dykhoff walked was terrazzo flooring made of chips of marble and granite. It had been stripped and waxed about a month before. In the words of the compensation judge, it was "highly polished, very clean, dry and flat."

6. Dykhoff did not trip on anything, but rather slipped on the terrazzo floor. Dykhoff's shoes left V-shaped scuff marks at the point where she fell.

We then reach the question of whether the undisputed facts amount to a causal connection between the injury and the employment. Here the majority and I part ways. Even without crediting Dykhoff's testimony that the floor was "slippery," the undisputed facts establish as a matter of law the requisite causal connection between Dykhoff's employment and her injury. Whether, as a matter of physics, the fall was caused by the employer's terrazzo floor within its exclusive control, by the shoes Dykhoff wore to comply with the employer's direction to wear dress clothes, or by the interaction between the floor and the shoes, there was a causal connection

between her injury and her employment. Dykhoff thereby met her burden to prove that the injury "arose out of" her employment.[1]

I share the concern of Justices Page and Stras that the majority's application of the "arising out of" requirement to these facts is unduly limiting. The majority's announcement of an "increased risk doctrine" with sharper teeth tightens the standard for recovery. The majority's analysis strikes me as inconsistent with *Nelson, Foley* and *Kirchner.*

Had the majority applied the undisputed facts to the law of these cases, it could have saved for another day (with the benefit of full briefing) the issue of whether Minnesota should join the growing number of jurisdictions that have adopted the "positional risk doctrine." In light of the majority's decision, nothing prevents the Legislature from considering whether the "positional risk doctrine" should be codified, including whether the "increased risk doctrine" should be limited to occupational-disease injuries, *see* Minn.Stat. § 176.011, subd. 15 (2012).

STRAS, Justice (dissenting).

I join the dissent of Justice Lillehaug.

---

1. Contrary to the majority's assertion that I am substituting my "judgment on a fact question for that of the fact-finder," I apply purely undisputed facts to the legal requirement of a causal connection between employment and injury. Such analysis on a question of law requires no deference to the fact-finder.