Josephine M. HOHLT, Respondent,

v.

UNIVERSITY OF MINNESOTA, Self-Insured, administered by Sedgwick Claims Management Services, Relator,

and

Fairview Health Services, University of Minnesota Physicians, Department of Labor and Industry/Vocational Restoration Unit, Painters & Allied Trades, and Clear Lake Physical Therapy & Rehab, Intervenors.

A16-0349

Supreme Court of Minnesota.

Filed: June 28, 2017

Richard C. Lund, Menk & Menk, Minneapolis, Minnesota, for respondent.

Roderick C. Cosgriff, Heacox, Hartman, Koshmrl, Cosgriff & Johnson, P.A., Saint Paul, Minnesota, for relator.

Mark A. Kleinschmidt, Cousineau McGuire Chartered, Minneapolis, Minnesota, for amicus curiae Minnesota Defense Lawyers Association.

## OPINION

LILLEHAUG, Justice.

Respondent Josephine Hohlt slipped and fell on an icy sidewalk when walking from her workplace to a parking ramp owned and operated by her employer, the University of Minnesota. Hohlt filed a claim for workers' compensation benefits. The compensation judge denied Hohlt's claim on the ground that her injury did not arise out of her employment. Hohlt appealed to the Workers' Compensation Court of Appeals (WCCA), which reversed the compensation judge on the "arising out of" issue and further held that the injury was "in the course of" employment. Because the WCCA was correct in concluding that Hohlt's injury was compensable, we affirm its decision.

## FACTS

On December 30, 2013, Josephine Hohlt drove to her job as a painter at the University, where she was scheduled to work from 3 p.m. to 11:30 p.m. Hohlt parked in the Oak Street ramp, a public parking ramp owned and operated by the University. She usually parked in the Oak Street ramp because it charged $6 per day for cars arriving after 2 p.m., rather than the usual $12 per day.[1]

Hohlt painted many buildings on the University's Twin Cities campus, but she most often worked in the Mayo building and the dormitories. That day, she painted in the Mayo building. Hohlt finished her work early, so she and two coworkers "punched out" at 10:30 p.m. It was sleeting and snowing that night, so Hohlt walked carefully on the sidewalk that stretched the four blocks between the Mayo building and the Oak Street ramp. Although the City of Minneapolis owns the sidewalk, the University as an adjacent property owner has the responsibility to maintain it, including keeping it clear of snow and ice. *See* Minneapolis, Minn., Code of Ordinances § 445.20 (2016).

When Hohlt and her coworkers reached the intersection of Oak Street and Delaware Street, they waited for the traffic light to indicate that they could cross the street. When the light changed, Hohlt walked forward onto the sidewalk's curb ramp. There, she slipped on ice and fell. Unable to get up, Hohlt was helped into a coworker's car and taken to a nearby emergency room.

Hohlt had broken her hip. It failed to heal properly, so she underwent hip replacement surgery about a year later. Two months later, Hohlt returned to her job as a painter without restrictions.

1. Although the Oak Street ramp called this discount a "contractor" rate, it was available to anyone who parked in the ramp during certain time periods.

Hohlt filed a claim petition for workers' compensation benefits, and a compensation judge held a hearing on the claim.[2] The issues contested at the hearing were whether Hohlt's injury arose out of her employment and was in the course of her employment. *See* Minn. Stat. § 176.021, subd. 1 (2016).

In its findings and order following the hearing, the compensation judge noted that "the parking lot exception may apply to the course and scope requirement," but did not decide the issue. The compensation judge concluded that Hohlt's injury did not "arise out of" her employment because "the hazard faced by the employee of falling on winter ice or snow was not unlike the hazard faced by the general public." Hohlt appealed the compensation judge's decision that her injury did not arise out of her employment. The University cross-appealed on the issue of the "in the course of" requirement.

The Workers' Compensation Court of Appeals, sitting en banc, unanimously reversed the compensation judge's "arising out of" conclusion. *Hohlt v. Univ. of Minn.*, No. WC15-5821, 2016 WL 698266, at *1 (Minn. WCCA Feb. 3, 2016). The WCCA determined that "Hohlt was on the premises of the employer when she was injured" because she had recently punched out and "was walking a short distance on the most direct route to a parking ramp owned and operated by her employer." *Id.* at *6. Thus, the WCCA concluded that "Hohlt was in the course of her employment when [she was] injured." *Id.* The WCCA also concluded that the injury arose out of Hohlt's employment because her "presence on the employer's premises . . . was not due to her membership in the general public but was because of her employment by the university." *Id.* at *5.

On appeal, the University argues that the WCCA erred as a matter of law by failing to adhere to *Dykhoff*'s rule that the "arising out of" and "in the course of" tests in the statute must be applied independently. *See Dykhoff v. Xcel Energy*, 840 N.W.2d 821, 830 (Minn. 2013). The University also contends that the WCCA erred in substituting its findings of fact for those of the compensation judge.

## ANALYSIS

 The WCCA is a "specialized agency of the executive branch, its members selected for their experience and expertise." *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54, 61 (Minn. 1984). It is entrusted with deciding "all questions of law and fact arising under the workers' compensation laws of the state in those cases that have been appealed to the [WCCA]." Minn. Stat. § 175A.01, subd. 5 (2016). We will reverse the WCCA on review if we determine that it clearly and manifestly erred by rejecting findings supported by substantial evidence and substituting its own findings. *Hengemuhle*, 358 N.W.2d at 59, 61; *Gibberd v. Control Data Corp.*, 424 N.W.2d 776, 779-80 (Minn. 1988). In this case, the relevant facts are undisputed, so we are left with a question of law, which we consider de novo. *Reider v. Anoka-Hennepin Sch. Dist. No. 11*, 728 N.W.2d 246, 249 (Minn. 2007) (interpreting provisions of the Workers' Compensation Act is a statutory question that we review de novo).

 The question of law presented is whether, applying undisputed facts, Hohlt's injury is compensable under Minn. Stat. § 176.021. Section 176.021, subdivi-

---

**2.** Before the hearing, the parties stipulated that all of the medical expenses at issue were reasonable and necessary, and that Hohlt's period of temporary total disability lasted from December 31, 2013, to December 11, 2014.

sion 1, provides that "[e]very employer is liable for compensation according to the provisions of this chapter and is liable to pay compensation in every case of personal injury or death of an employee arising out of and in the course of employment without regard to the question of negligence." The "arising out of" and the "in the course of" requirements in the statute are distinct and each must be met for an injury to be compensable. *Dykhoff*, 840 N.W.2d at 826. The University argues that Hohlt satisfied neither the "arising out of" requirement nor the "in the course of" requirement.

I.

For an injury to arise out of employment, "a causal connection—not necessarily in the proximate cause sense—must exist between the injury and the employment." *Gibberd*, 424 N.W.2d at 780. A causal connection "is supplied if the employment exposes the employee to a hazard which originates on the premises as a part of the working environment, or ... peculiarly exposes the employee to an external hazard whereby he is subjected to a different and a greater risk than if he had been pursuing his ordinary personal affairs." *Dykhoff*, 840 N.W.2d at 826 (quoting *Nelson v. City of St. Paul*, 249 Minn. 53, 81 N.W.2d 272, 275 (1957)) (internal quotation marks omitted). When "the employment creates a special hazard from which injury comes, then, within the meaning of the statute, there is that causal relation between employment" and the injury. *Id.* (quoting *Hanson v. Robitshek-Schneider Co.*, 209 Minn. 596, 297 N.W. 19, 21 (1941)) (internal quotation marks omitted).

The compensation judge determined that Hohlt's injury did not result from a special hazard. The University contends that this was a factual finding. It was not; rather, the compensation judge applied the law—the "increased-risk" test—to the undisputed facts. "Increased risk" is a legal test based on the workers' compensation statute's "arising out of" language. *See Dykhoff*, 840 N.W.2d at 826.

The WCCA applied the increased-risk test to the undisputed facts, and correctly concluded that there was a causal connection between the injury and the employment. Specifically, the causal connection exists because Hohlt's employment exposed her to a hazard that originated on the premises as part of the working environment.

In this case, that hazard was the University-maintained sidewalk. Hohlt was moving from one part of her employer's premises to another.[3] As she walked from the Mayo building to the Oak Street ramp, she fell on an icy patch. She was exposed to the icy sidewalk on her employer's premises because she was there, not as a member of the general public, but because of her employment as a painter. There was a causal connection between her injury and her employment. Thus, the "arising out of" requirement is satisfied.

Our case law firmly supports this application of the increased-risk test. In *Foley*, an employee was murdered in an employer-owned parking ramp while walking from the office to her car. *Foley v. Honeywell, Inc.*, 488 N.W.2d 268, 270 (Minn. 1992). The ramp was open to the public visiting the employer's premises, as was

---

**3.** According to the dissent, Hohlt's injury did not occur on "her employer's premises" because she fell on a public sidewalk. But this sidewalk was on the University campus and was maintained by the University. *See* Minneapolis, Minn., Code of Ordinances § 445.20.

In any event, an injury sustained on a public sidewalk or street may be compensable. *See Goff v. Farmers Union Accounting Serv., Inc.*, 308 Minn. 440, 241 N.W.2d 315, 316-18 (1976)."

the Oak Street ramp in this case. We held that Foley's "presence at the facility ... was due to her employment by Honeywell. Thus the risk to her arising from any unsafe conditions in the ramp was associated with her employment, and her injury followed as a natural incident of the work."[4] *Id.* at 272 (internal quotation marks omitted). *Foley* was discussed in *Dykhoff*, 840 N.W.2d at 827.

Likewise, in *Hanson*, an employee was assaulted and murdered when walking at night from the office to his car. *Hanson*, 297 N.W. at 20. The employer's premises were in a high-crime area, where the employee faced the same risks as any member of the public. *Id.* at 20-21. As in *Foley*, we held that the employee was exposed to the hazard as a result of his employment, so the employee's death arose out of his employment. *Hanson*, 297 N.W. at 21. *Hanson*, too, was discussed in *Dykhoff*, 840 N.W.2d at 827. *Foley* and *Hanson* show that the test is not whether the general public was also exposed to the risk, but whether the employee was exposed to the risk because of employment.

The two cases on which the University primarily relies, *Satack* and *Dykhoff*, are not to the contrary. In *Satack*, an employee received a ride to work from her husband, who dropped her off near her office. *Satack v. State, Dep't of Pub. Safety*, 275 N.W.2d 556, 557 (Minn. 1978). The employee slipped and fell while walking on an icy sidewalk that led to her office. *Id.* We held that the injury did not arise out of her employment in part because the sidewalk "was a route used by the employee in common with members of the general public and the hazard faced by her of falling on winter ice or snow was not unlike the hazard faced by the general public." *Id.* at 558.

While the facts of *Satack* are certainly similar to the facts in this case, there is a key difference. Unlike Satack, Hohlt was moving between her employer's premises when she was injured. Satack was not moving between her employer's premises when she fell.[5] *Satack* itself draws this distinction: there is the "common exception to the premises requirement under which an injury sustained by an employee while traveling between two parts of his employer's premises is held to arise out of and in the course of his employment." *Id.* (citation omitted). Thus, Hohlt's walk arose out of her employment, while Satack's walk did not.[6]

---

**4.** The dissent attempts to distinguish *Foley* by observing that Foley was required to park in the ramp where she was murdered, the ramp offered limited access to the general public, and Foley was murdered in the ramp rather than on a sidewalk. But *Foley*'s "arising out of" determination did not depend on these circumstances. Instead, the fact that Foley was in the parking lot "due to her employment by Honeywell" was decisive. *Foley*, 488 N.W.2d at 272. Hohlt's injury, sustained while she traveled between two premises owned by her employer, was likewise a result of her employment.

**5.** *Cf. Starrett v. Pier Foundry*, 488 N.W.2d 273, 274 (Minn. 1992) (affirming an award of compensation to an employee for an injury sustained in a fall that occurred in an employer-

owned parking lot); *Merrill v. J.C. Penney*, 256 N.W.2d 518, 519-21 (Minn. 1977) (affirming an award of compensation to an employee for an injury sustained in a fall that occurred in a parking lot, when the employer did not own the lot but paid to maintain it as part of the employer's shopping center lease).

**6.** The dissent contends that "the University did not create the necessity for Hohlt to walk to the Oak Street ramp" because Hohlt could have parked at a different ramp with tunnel or skyway access to her worksite, thereby avoiding the icy sidewalk. But the test for whether an injury arose from employment is not whether the employee could have possibly avoided the risk; rather, the test is whether the employee was exposed to the risk because of employment. *Foley*, 488 N.W.2d at 272;

The University contends that this reasoning, which draws on our case law focusing on the location of the hazard and the injury, collapses the "arising out of" requirement into the "in the course of" requirement. Not so. To meet the "arising out of" requirement, the employee must still be exposed to increased risk. *Dykhoff* is illustrative.

In *Dykhoff*, an employee fell on the floor while walking to a meeting on the employer's premises. 840 N.W.2d at 824. The floor was flat, dry, and clean. *Id.* We agreed with the compensation judge's finding that nothing about the floor increased the employee's risk of injury, and therefore we held that Dykhoff failed to prove that her injury arose out of her employment. *Id.* at 828. Essentially, *Dykhoff* is a case about unexplained injury. Here, Hohlt's injury is fully explained. She encountered an icy sidewalk, not a clean floor. The icy sidewalk created an increased risk of injury, so Hohlt's slip and fall arose out of her employment. *See Olson v. Trinity Lodge No. 282*, 226 Minn. 141, 32 N.W.2d 255, 259 (1948) (holding that an icy sidewalk was a hazard arising out of employment).

The University takes *Dykhoff* a step too far when it argues that an icy sidewalk is not an increased risk because all Minnesotans face the risk of falling on winter ice or snow. The WCCA properly observed that sharpening the increased-risk test that way would eliminate a broad swath of compensable injuries. As the WCCA put it, under the University's interpretation of the increased-risk test, a "hotel maid in-jured while cleaning a hotel room would not be covered because members of the general public do cleaning and the maid cleans her own residence. The same would hold true for landscape workers, delivery drivers, cooks, and many other occupations." *Hohlt*, 2016 WL 698266, at *4. This cannot be what the Legislature intended, and is certainly not consistent with our case law. When an employee encounters an increased risk of injury from a hazard on the employer's premises because of her employment, her injury is one "arising out of" employment under the statute. Accordingly, we hold that Hohlt's slip and fall arose out of her employment.

## II.

▇ Next, we consider the "in the course of employment" requirement of the workers' compensation statute. Minn. Stat. § 176.021, subd. 1. An employee is in the course of employment while providing services to the employer and also for "a reasonable period beyond actual working hours if an employee is engaging in activities reasonably incidental to employment." *Starrett v. Pier Foundry*, 488 N.W.2d 273, 274 (Minn. 1992). A "reasonable" time has included up to 45 minutes before the official workday begins, *Satack*, 275 N.W.2d at 557 n.1, and up to an hour after the official workday ends, *Blattner v. Loyal Order of Moose*, 264 Minn. 79, 117 N.W.2d 570, 571 (1962).

▇ "As a general rule, injuries suffered by an employee while commuting to and from work are not compensable."

*Hanson*, 297 N.W. at 21. An employer that establishes a parking lot used by employees has created circumstances in which an employee may encounter hazards while traveling between the employer's worksite and its parking lot. *Starrett*, 488 N.W.2d at 274 ("[T]ravel between the employer's parking lot and the main premises is considered to arise out of and in the course of employment."). Thus, the dissent's citations to cases in which an employee was traveling to a place not controlled by the employer are inapposite. *See Blanks v. Oak Ridge Nursing Home*, 281 N.W.2d 690, 690 (Minn. 1979); *Bronson v. Joyner's Silver & Electroplating, Inc.*, 268 Minn. 1, 127 N.W.2d 678, 680 (1964); *Sommers v. Schuler Chocolates, Inc.*, 239 Minn. 180, 58 N.W.2d 194, 196 (Minn. 1953).

*Swanson v. Fairway Foods*, 439 N.W.2d 722, 724 (Minn. 1989). However, an injury that occurs while the employee is in an employer-owned or -operated parking facility may be compensable. *See Foley*, 488 N.W.2d at 272-73; *Starrett*, 488 N.W.2d at 274; *Merrill v. J.C. Penney*, 256 N.W.2d 518, 520 (Minn. 1977); *Goff v. Farmers Union Accounting Serv., Inc.*, 308 Minn. 440, 241 N.W.2d 315, 318 (1976). There exists "a common exception to the premises requirement under which an injury sustained by an employee while traveling between two parts of his employer's premises is held to arise out of and in the course of his employment." *Satack*, 275 N.W.2d at 558 (citation omitted). *Foley, Starrett, Merrill*, and *Goff* apply that exception to injuries sustained in employer-owned or -operated parking lots. *See, e.g., Goff*, 241 N.W.2d at 317 (determining that an "employee is within the protection of the act during a reasonable period of time for purposes of ingress and egress" (citing *Olson*, 32 N.W.2d at 258)); 2 Lex K. Larson, *Larson's Workers' Compensation Law* § 13.01[2][b] (Matthew Bender Rev. Ed. 2016) ("By establishing or sponsoring a parking lot not contiguous to the working premises, the employer has created the necessity for encountering the hazards lying between these two portions of the premises. No such considerations apply to a trip to some bus stop ... or to some parking location on a public street over which the employer has no conceivable control."). As the compensation judge hinted, and as the WCCA held, Hohlt's injury arose in the course of her employment.

She slipped and fell shortly after leaving work. This was "a reasonable period beyond actual working hours." *Starrett*, 488 N.W.2d at 274. Hohlt's direct walk to her car, only four blocks away, was "reasonably incidental to employment." [7] *Id.* Finally, Hohlt sustained the injury after leaving work at a University building and walking directly on the University-maintained sidewalk to the University's parking ramp. Thus, we hold that Hohlt was in the course of her employment when she was injured.

The University argues that a rule establishing that all employer-owned or operated parking facilities are part of the employer's premises would conflict with *Dykhoff*'s prohibition on collapsing the statute's two distinct requirements. In *Dykhoff*, we rejected the WCCA's "work-connection balancing test" because it "collapse[d] the 'arising out of' requirement into the 'in the course of' requirement." *Dykhoff*, 840 N.W.2d at 825, 829. We have done no such collapsing in this case. Nor do we announce any new rule of law regarding parking ramps. Instead, we have analyzed the two statutory requirements separately, as the statute and *Dykhoff* mandate.

Based on our precedent applied to the undisputed facts, Hohlt's injury both arose out of, and was in the course of, her employment. It is compensable.

## CONCLUSION

For the foregoing reasons, we affirm.

GILDEA, C.J., and STRAS and CHUTICH, JJ., took no part in the consideration or decision of this case.

Lillehaug, J. Dissenting, Anderson, J., and Halbrooks, Jill, Acting Justice *

---

7. The dissent incorrectly posits that our opinion makes an employer liable for an employee injury occurring "miles away" from the workplace so long as the employee was en route to an employer-owned parking lot. That, of course, is not this case. An employee's walk to a parking lot that is abnormally far from the workplace would not be "reasonably incidental to employment." *Starrett*, 488 N.W.2d at 274.

* Appointed pursuant to Minn. Const. art. VI, § 2, and Minn. Stat. § 2.724, subd. 2 (2016).

## DISSENT

ANDERSON, Justice (dissenting).

I respectfully dissent. The employee admitted that her injury occurred while in pursuit of personal activities, was due to a hazard that did not originate with her job, and was from a risk shared in common with the public generally. Yet, the approach adopted by the court holds that employers are liable for garden variety slip-and-falls that may occur anywhere between the workplace and the employee's chosen parking spot.

Minnesota's workers' compensation laws are "not designed to give compensation for every disability caused by accidental injury to the employee" and do "not make the employer an insurer against all accidents that might befall an employee in his employment." *Auman v. Breckenridge Tel. Co.*, 188 Minn. 256, 246 N.W. 889, 890 (1933). Thus, the employee bears the burden of proof to demonstrate that her injury "[arose] out of and in the course of employment." Minn. Stat. § 176.021, subd. 1 (2016). Because I conclude that Hohlt has not satisfied either of these prongs, I would reverse the Workers' Compensation Court of Appeals.

## I.

Under the first prong, the employee must establish that his or her injury arises out of the employment. Minn. Stat. § 176.021, subd. 1. This prong requires some "causal connection between the conditions which the employer puts about the employee and the employee's resulting injury." *Nelson v. City of St. Paul*, 249 Minn. 53, 81 N.W.2d 272, 275 (1957). In other words, "the employment, by reason of its nature, obligations or incidents may reasonably be found to be the source of the injury-producing hazard." *Id.* This causal connection is met when the employment "'peculiarly exposes the employee to an

external hazard whereby he is subjected to a different and greater risk than if he had been pursuing his ordinary personal affairs.'" *Dykhoff v. Xcel Energy*, 840 N.W.2d 821, 826 (Minn. 2013) (quoting *Nelson*, 81 N.W.2d at 275); *see also Johannsen v. Acton Constr. Co.*, 264 Minn. 540, 119 N.W.2d 826, 831 (1963) ("[A]n employee is within the protection of the act as long as he is exposed to a hazard causally connected with the employment and peculiar to it. This does not mean that the protection will continue when he has entered the avenues of travel where he is exposed to no work-connected hazard or any hazard greater than that to which all others not so employed are exposed."); *Simonson v. Knight*, 174 Minn. 491, 219 N.W. 869, 870 (1928) ("The controlling idea is that the hazard is localized on and peculiar to the place of employment rather than detached therefrom and so generalized to the community at large. In such a case the risk is referable to the employment rather than anything outside and beyond it."). In other words, the employee must establish that the employment exposed her to an increased risk or special hazard. *Dykhoff*, 840 N.W.2d at 826-27.

Here, Hohlt did not establish that her injury was in any way caused by her employment. To the contrary, Hohlt admits that she fell on a public sidewalk and that "any member of the general public" was "equally at risk" for falling on the same sidewalk due to the same conditions—ice— that Hohlt faced. She also admits that the risk of falling on an icy sidewalk is not "unique or peculiar" to her job as a painter, that the risk was no greater than if she had been walking on the same sidewalk in pursuit of personal activities, and that she was not performing any work while walking to the Oak Street ramp. Hohlt acknowledged that the icy conditions did not "originate with [her] job as a painter."

Finally, Hohlt testified that she was in pursuit of personal, not work, activities when she fell. In other words, the undisputed facts overwhelmingly demonstrate that Hohlt's injury has no connection to her employment, and thus, there was no increased risk or special hazard.[1] In my view, this evidence should end the analysis. *See Blanks v. Oak Ridge Nursing Home*, 281 N.W.2d 690, 690 (Minn. 1979) (affirming denial of claim for injury sustained from a fall on a sidewalk adjacent to employer's premises because "the hazard to which [the employee] was exposed was not one incident or causally related to her employment but instead one no greater than that to which all others not so employed would be exposed if they chose to traverse the boulevard"); *Bronson v. Joyner's Silver & Electroplating, Inc.*, 268 Minn. 1, 127 N.W.2d 678, 680 (1964) ("[A]n accidental injury sustained by an employee while absent from his place of employment for a purpose not connected with such employment ... is not covered by the act."); *Sommers v. Schuler Chocolates, Inc.*, 239 Minn. 180, 58 N.W.2d 194, 195-96 (1953) (affirming the denial of a claim for injury sustained from a fall on an icy sidewalk in front of an employer's building because "[a]ny public street or sidewalk used by an employee in leaving or arriving at his employment would as well be a part of the working premises as was the site of this accident, and manifestly such a construction is not possible under the statute").

Nevertheless, the court concludes that because Hohlt was walking from her workplace to the parking ramp, the employer is liable for an injury that occurs from *any* hazard, even if the risk posed by the hazard is equally shared by members of the general public. The court's opinion is an unprecedented expansion of workers' compensation liability. *See Sommers*, 58 N.W.2d at 195-96 (rejecting an employee's claim that the icy sidewalk on which she fell was part of her "route of ingress and egress" and stating that "no case ... decided by this court has carried the concept of working premises so far"). Previously we have defined the increased risk posed by a hazard as requiring that the employment *"peculiarly* expose[ ] the employee to an external hazard whereby he is subjected to a *different and a greater* risk than if he had been pursuing his ordinary personal affairs." *Dykhoff*, 840 N.W.2d at 826 (emphasis added); *see Novack v. Montgomery Ward & Co.*, 158 Minn. 495,198 N.W. 290, 292 (1924) ("The moving cause of danger must be peculiar to the work, and not common to the neighborhood."). In holding that any risk posed by a hazard shared by employees and the public generally is sufficient, the court has taken "increased" out of the risk determination.[2]

---

1. The court suggests that applying the increased-risk test to determine whether an injury arises out of the employment is a legal question. I disagree, but it is unnecessary to resolve this issue here. "Usually the question of whether the accident which caused the injury 'arose out of' the employment is one of fact." *Auman*, 246 N.W. at 891; *see Dykhoff*, 840 N.W.2d at 827 (stating that the employee "did not prove that her workplace exposed her to a risk of injury that was increased over what she would face in her everyday life"). As Hohlt conceded that her injury had no relationship to her job and that the icy sidewalk posed no different risk to her than it did to any member of the public, it does not matter whether this is a legal or factual question. Hohlt's claim fails both legally and factually.

2. The court worries that my approach would foreclose compensation for injuries to hotel maids, landscapers, and cooks because most people face similar risks when they clean, landscape, and cook at home. Obviously, none of these scenarios are presented here, but I note that Hohlt's injury occurred under very different circumstances. Hohlt was not performing any work for her employer when she was injured and she was not "on the clock." This might be a very different case if Hohlt's

Indeed, we have already held that the hazard of falling on ice on a public sidewalk is not an increased risk. *Satack v. State, Dep't of Pub. Safety*, 275 N.W.2d 556, 558-59 (Minn. 1978). The facts of *Satack* are remarkably similar to the facts presented here. In *Satack*, the employee fell on "winter ice or snow." *Id.* at 558. So did Hohlt. In *Satack*, the employer owned many of the surrounding buildings. *See id.* at 557 (describing the building in which the employee worked as "part of what is called the Capitol complex"). So did Hohlt's employer, the University of Minnesota. In *Satack*, the employee was free to choose any means for traveling to work. *Id.* at 558. So was Hohlt. In *Satack*, the injury occurred on a public sidewalk. *Id.* at 557. Hohlt's injury also occurred on a public sidewalk. In *Satack*, the employer had the duty to maintain the sidewalk. *Id.* So did Hohlt's employer. In fact, if anything, Satack's injury occurred in much closer proximity to the actual building in which she worked—about 100 feet or so from the entrance, *id.* at 557—while Hohlt was some blocks away from the building in which she was working. If proximity is a

relevant distinction, then Satack should receive compensation and Hohlt should not. Under the court's decision today, the reverse is true: the employee farther away from the worksite when injured will be compensated.

The "key difference" the court relies on to distinguish *Satack* is essentially that Satack was dropped off for work and Hohlt drove herself to work (and thus parked in a ramp owned by her employer).[3] *Id.* But this cannot be a functional way to distinguish the two cases. Under the court's approach, two employees, walking together, could fall on the same icy sidewalk at the same time and yet one may be entitled to compensation and the other may not be, depending on how they traveled to work that day. Further, under the court's approach, University employees may be entitled to compensation for injuries sustained anywhere on University property, while under *Satack*, State employees are not entitled to compensation for injuries occurring on State-owned property; and the University is liable for

job required her to be on the sidewalk. *See Olson v. Trinity Lodge No. 282*, 226 Minn. 141, 32 N.W.2d 255, 259 (1948) (stating that the employee "as an incident and as an obligation of his employment, was exposed to the risk" of an icy sidewalk). Moreover, the determination of whether compensation is available for injuries that result from risks commonly shared by some employees with the public generally is for the Legislature, not our court. *See Bronson*, 127 N.W.2d at 682 ("If it is desirable to extend the coverage of the Workmen's Compensation Act to employees ... exposed only to the same hazards as is the public generally ... this would be a matter for the legislature, rather than the courts, and obviously an amendment to [the statute] would be necessary.").

3. The court argues that *Satack* itself draws this distinction because we noted in *Satack* that *Goff v. Farmers Union Accounting Service, Inc.*, 308 Minn. 440, 241 N.W.2d 315

(1976), and *Faust v. State, Department of Revenue*, 312 Minn. 438, 252 N.W.2d 855 (1977), "exemplify a common exception to the premises requirement under which an injury sustained by an employee while traveling between two parts of his employer's premises is held to arise out of and in the course of his employment." *Satack*, 275 N.W.2d at 557-58. Although it is true that Goff and Faust were walking from their employers' buildings to another area that was deemed part of the employers' premises, we did not distinguish them on that basis. Rather, we held that "these cases are distinguishable ... because [in *Satack*, unlike in *Goff* and *Faust*,] there was no showing that the employer had knowledge of the employee's route to work and because there was no special hazard annexed to [Satack's] employment in the use of that route." *Id.* at 558. Hohlt's injury can be distinguished from *Goff* and *Faust* in the same way.

compensation based on the condition of public sidewalks while the State is not. The court provides no explanation for this inconsistent reasoning and result.[4]

By relying heavily on *Foley v. Honeywell, Inc.*, the court concludes that Hohlt's injury arose out of her employment. 488 N.W.2d 268 (Minn. 1992). But *Foley* does not apply here. In *Foley*, we determined that, under the Workers' Compensation Act the employer was liable when an employee was raped and murdered in the employer's parking ramp. *Id.* at 273. We held that the injury and death arose out of the employment because "[the employee] was not a member of the general public using the lot, and her presence at the facility, whether for personal or business reasons, was due to her employment by Honeywell." *Id.* at 272.

But there are key differences between the ramp in *Foley* and the one here. First, the ramp in *Foley* is described as part of the "Honeywell office complex." *Id.* at 270. Unlike Hohlt, who decided where to park without her employer's advice, direction, or consent, there is no evidence that Foley could choose where to park while at her employer's office. Accordingly, in *Foley*

the employee's presence in the ramp was "due to her employment," *id.* at 272, whereas Hohlt's presence on the sidewalk was not due to her employment because the location of Hohlt's car, and the path Hohlt walked to get to her car, were entirely her own choosing.

Second, the ramp in *Foley* is described as available to "Honeywell employees and visitors." *Id.* at 270. It was a parking location used for business purposes, and nothing in *Foley* suggests any other use. This situation is significantly different from the University ramp, which is simply a public parking ramp where anyone can park, regardless of whether they have any business at the University.

Third, and perhaps most critical, we said that "the risk [to the employee] arising from any unsafe conditions *in the ramp* was associated with her employment." *Id.* at 272 (emphasis added). Hohlt's injury did not result from an unsafe condition in the University's ramp. Hohlt's injury resulted from a slip and fall on an icy sidewalk *outside of the ramp* to which she was headed—indeed, Hohlt was not even at the ramp when she fell.[5] Fur-

---

4. The court attempts to address the difference between employees who drive to work and employees who arrive by other means by citing a treatise that states: "By establishing or sponsoring a parking lot not contiguous to the working premises, the employer has created the necessity for encountering the hazards lying between these two portions of the premises. No such considerations apply to a trip to some bus stop ... or to some parking location on a public street over which the employer has no conceivable control." 2 Lex K. Larson, *Larson's Workers' Compensation Law* § 13.01[2][b] (Matthew Bender rev. ed. 2016). But here, the University did not create the necessity for Hohlt to walk to the Oak Street ramp. It is undisputed that there were at least two parking ramps connected by tunnel or skyway to her assigned building. Hohlt could have chosen to park in either of these two

ramps and thereby avoided the risk of walking on icy sidewalks.

Nevertheless, the court concludes that providing parking facilities connected to the Mayo building was insufficient. Instead, the court essentially holds the University liable for Hohlt's injury merely because it gave her the option to park in the Oak Street ramp, along with many other options. But under this reasoning, *Satack* is indistinguishable because, like the University, Satack's employer imposed no restrictions on how the employee must travel to and from work. Therefore, both Hohlt and Satack chose one of many transportation options and their choices led to their injuries. The court's attempts to distinguish *Satack* are unavailing.

5. *Starrett v. Pier Foundry*, 488 N.W.2d 273, 274 (Minn. 1992) can be similarly distin-

ther, Hohlt concedes that the risk posed by the icy sidewalk was not associated with her employment because it was "not unique or peculiar to [her] job," did not "originate with [her] job" and was "no greater than if [she] had been walking that street in pursuit of [her] own personal business." Thus, even Hohlt concedes that there was no connection between her employment and the risk posed by the icy sidewalk, so the court is simply wrong when it concludes that a causal connection exists based on no more than Hohlt's presence on the sidewalk "because of her employment as a painter."

The court also relies on *Hanson v. Robitshek-Schneider Co.*, 209 Minn. 596, 297 N.W. 19 (1941) to support its position that injuries occurring while an employee · is walking to his or her car arise out of employment. But, unlike Hohlt, Hanson's employment *required* him to walk to his car because he used it for his work as a traveling salesman. *Id.* at 20. As a result, we held that Hanson's injury arose out of his employment. *Id.* at 21. In *Hanson*, we specifically concluded that the decision was supported by the street risk doctrine, *id.* at 22, which allows compensation when an employee's duties require him to be on the street, *Bookman v. Lyle Culvert & Rd. Equip. Co.*, 153 Minn. 479, 190 N.W. 984,

984 (1922). Because Hohlt did not perform services for her employer while walking to her car, *Hanson* is not relevant to Hohlt's claims.

In sum, the court has not cited a single case in which we have held that a fall on an icy public sidewalk is compensable when the employee concedes that the condition of the sidewalk was unrelated to the job and posed no greater risk than that faced by any other member of the public.[6] By holding that Hohlt met her burden of proof to demonstrate that her fall—after work, blocks from work, while returning to a location she chose for parking—arises out of her employment, the court has stripped this element down to nothing more than a showing that the employee fell. I do not believe that the statute or our case law supports this result.[7] Because *Satack* held that falling on ice on a public sidewalk is not an increased risk, I would likewise hold the same here. Accordingly, Hohlt has not shown that her injury arose out of her employment.

### II.

Even if Hohlt could show that her injury arose out of her employment, I would conclude that it did not occur in the course of her employment. This requirement "refers to the time, place, and circumstances of

guished because the employee's fall in *Starrett* occurred in the employer's parking lot.

6. The court also relies on *Olson* to conclude that an icy sidewalk creates an increased risk of injury, thereby satisfying the arising out of prong. 32 N.W.2d at 259. But *Olson* involved a janitor who fell *on the very sidewalk that his job required him to keep clear of ice and snow. Id.* at 256-57. Furthermore, Olson did not fall on a public sidewalk. *Id.* ("The fall occurred after he had turned off the public sidewalk."). The circumstances of Hohlt's injury are dramatically different, particularly given her concessions that demonstrate as a matter of law that she faced no increased risk or special hazard.

7. The court describes *Dykhoff* as "a case about unexplained injury." I do. not agree. *Dykhoff* was about a failure to meet the burden of proof on the arising-out-of element. 840 N.W.2d at 828 ("Without any proof that something about the floor increased her risk of injury, ... Dykhoff did not meet her burden to prove that her injury arose out of her employment."). As it is undisputed that Hohlt faced no increased risk by reason of an icy public sidewalk, it is not clear on what basis the court decides that she met her burden of proof here.

the incident causing the injury." *Gibberd v. Control Data Corp.*, 424 N.W.2d 776, 780 (Minn. 1988).

In general, "employee[s] who [are] injured in going to or away from the premises" are "not entitled to compensation ... unless at the time of injury [the employee was] engaged in a service for the employer." *Goff v. Farmers Union Accounting Serv., Inc.*, 308 Minn. 440, 241 N.W.2d 315, 317 (1976). I recognize that our case law allows a reasonable time for ingress and egress and that occasionally we have awarded compensation with delays between the end of work and the injury longer than the delay here. *See, e.g., Blattner v. Loyal Order of Moose*, 264 Minn. 79, 117 N.W.2d 570, 572, 574 (1962). But the place and circumstances of Hohlt's injury preclude compensation.

First, Hohlt was injured four blocks from the building in which she worked.[8] This is a significant distance; so significant, in fact, that we have never previously awarded compensation for an injury that occurred on the way to a parking lot this far from the workplace. There is a reason that distance is important in evaluating this element. Is parking at a distance four blocks from the worksite compensable, but five blocks is not? If parking at a distance five blocks from the worksite is not compensable, why not? The court says that an injury would not be compensable if it occurred "abnormally far" from the workplace, but the court does not define what distance is abnormal. Hohlt chose to park in the Oak Street public parking ramp because it was convenient for her, but the University of Minnesota Twin Cities campus contains many public parking facilities

spread out over a large campus located in Minneapolis and Saint Paul. Under the court's analysis, the University could be liable for Hohlt's injury whether she fell just outside the Mayo building or miles away—as long as she was walking to her car parked in an employer-owned parking ramp. I cannot agree to the broad and unprecedented rule the court announces here.

Second, the court does not discuss the circumstances of Hohlt's injury, instead adopting a rule that effectively holds that all employer-owned or operated parking facilities are a part of the employer's premises and an injury that occurs while traveling between the workplace and the parking facility is always in the course of employment. But, as a review of precedent cited by the court will illustrate, the particular circumstances of each parking facility are relevant in determining whether an injury occurred in the course of employment.

First, the court cites *Merrill v. J.C. Penney*, 256 N.W.2d 518 (Minn. 1977) to support its conclusion. In *Merrill*, we held that an employer was liable for injuries that the employee sustained on her way from the employer's parking lot to her workplace. *Id.* at 520-21. Importantly, the employer in *Merrill* told the employee to "park in the more distant overflow parking lot" so that customers could park closer to the store. *Id.* at 519. Therefore, when the employee fell and was injured in the distant overflow lot—the very place her employer required her to be—the employer was liable for her injuries. *Id.* at 519, 521.

---

8. The court states that Hohlt was injured "on her employer's premises." She was not. It is undisputed that Hohlt was on a public sidewalk. The fact that the public sidewalk was on the University's campus does not make it part of the employer's premises and we have never held as such. *See Satack*, 275 N.W.2d at 558 ("The fact that the worksite was part of what is called the Capitol complex is not itself enough to constitute the entire area as the premises of the employer.").

But here, unlike *Merrill*, Hohlt was not required to park in any particular location. She chose the Oak Street ramp because its location and price made it convenient for her. The University had no preference as to where Hohlt parked, if at all, and therefore cannot be responsible for Hohlt's presence on the sidewalk when the injury occurred. *Merrill* is simply not on point.

The court also relies on *Goff*, 241 N.W.2d 315. In *Goff*, the employer was aware that "most employees" walked directly across the street separating the employer's main building from a parking lot. *Id.* at 317. We concluded that the route to the parking lot was a special hazard due to the "relative proximity of the parking lot" and its "habitual use by the employees." *Id.* at 318. The Oak Street ramp was neither proximate to the Mayo building nor used by most University employees. *Goff* is not helpful here.

Finally, the court relies on *Foley*, 488 N.W.2d 268.[9] But, as I discussed earlier, there are multiple differences between the parking ramp in *Foley* and the Oak Street ramp. Additionally, *Foley* did not address whether the death was in the course of employment because the parties "agree[d] that ... if [the employee] was working on the day of her death, [the death] occurred in the course of her employment." *Id.* at 272.

Together, all of these cases suggest that the circumstances surrounding an injury that occurs in or near a parking facility matter. We have considered whether the employer directed the employee to park in a particular location, *Merrill*, 256 N.W.2d at 519, whether a parking facility was near the employer's building, *Goff*, 241 N.W.2d at 317-18, whether the employer knew that employees often took a particular route to

their cars, *Id.* at 317, and whether the parking facility was limited to employee and business use, *Foley*, 488 N.W.2d at 270. None of these circumstances are present here.

Fundamentally, this is a workers' compensation "coming and going" dispute. Ordinarily, injuries that occur between a workplace and the employee's home are not compensable. *McConville v. City of St. Paul*, 528 N.W.2d 230, 231 (Minn. 1995). Here, Hohlt had punched out of work. She was not performing any work duties. She was walking on a public sidewalk, simply going home. Under such circumstances, the employer should not be liable for all injuries she might sustain on her way to the parking location that she chose as a matter of convenience.

Accordingly, because Hohlt has not shown that her injury arose out of her employment or that it occurred in the course of employment, I would reverse the Workers' Compensation Court of Appeals. For these reasons, I respectfully dissent.

HALBROOKS, Acting Justice (dissenting).

I join in the dissent of Justice Anderson.

---

**9.** The court also relies on *Starrett*, 488 N.W.2d at 274. For the reasons discussed in footnote 5, *Starrett* is of no help to the court.