MCKEIG, Justice.
*375 This workers' compensation case concerns an employee who fell down a set of stairs on her employer's premises and was injured as a result. The facts related to how and why she fell are undisputed. Thus, this case presents the purely legal question of whether her injury "arose out of" her employment. In answering that question, the workers' compensation judge and the Workers' Compensation Court of Appeals (WCCA) took opposing views of the "increased-risk" test we applied in Dykhoff v. Xcel Energy , 840 N.W.2d 821 (Minn. 2013).
Because we agree with the WCCA that Roller-Dick's injury arose out of employment under the increased-risk test, we affirm.
FACTS
Respondent Laurie Roller-Dick is an employee of Relator CentraCare Health System. One day, as she was leaving work, Roller-Dick fell down a set of stairs, fracturing her left ankle as a result.
Roller-Dick accessed the stairway from the second-floor administrative area where she worked. The stairs are not usually accessible to the general public. The stairway has railings on both sides as well as nonslip treads on the steps. Immediately before Roller-Dick fell, she was not using the handrails. She was holding a plant from her desk in both hands and her handbag was hanging from the crook of her elbow. As she was falling, she dropped her plant and caught herself on the handrail, resulting in the ankle injury.
Before the workers' compensation judge, Roller-Dick testified that the rubber sole of her shoe "stuck" to the treads of the stairs. But the workers' compensation judge found that "the non-skid surface of the stairs [neither] contributed to [nor] increased the risk of her fall." Further, the compensation judge found that the stairs were "a reasonable and consistent height" and that they were "free of debris, moisture, and defects" at the time of Roller-Dick's fall.
The only issue before the compensation judge was whether Roller-Dick's injury "arose out of" her employment. Relying on Dykhoff v. Xcel Energy , 840 N.W.2d 821 (Minn. 2013), and Kirchner v. County of Anoka , 339 N.W.2d 908 (Minn. 1983), the compensation judge held that the injury did not arise out of employment because Roller-Dick failed to establish that the stairs were "more hazardous than stairs she might encounter in everyday life or that her work duties in some way increased her risk of falling as she descended them." The compensation judge commented that it was "undoubtedly true" that the fact that Roller-Dick was not holding onto the handrails increased her risk of falling. But because Roller-Dick could not identify a "work-related reason" why she was not using the handrails, the compensation judge rejected the argument that her injury arose out of her employment on the basis of that fact.
The WCCA reversed. The WCCA determined that the compensation judge applied *376 the incorrect test by requiring the employee to demonstrate some defect or additional hazard on the stairs. Roller-Dick v. CentraCare Health Sys. & SFM Mut. Co , No. WC17-6057, 2017 WL 5504738, at *2 (Minn. WCCA Oct. 19, 2017). The correct test, the WCCA said, is whether the stairs posed an "increased" as opposed to a "neutral" risk. Id. at *3. The WCCA determined that stairs in the workplace are inherently hazardous, and thus they are not a "neutral condition" like the floor at issue in Dykhoff . Id. Because the stairs alone increased Roller-Dick's risk of injury, the WCCA held that her injury arose out of her employment. Id.
Relators sought certiorari review.
ANALYSIS
Under our workers' compensation system, employees give up their rights "to sue for damages over and above medical and health care benefits and wage loss benefits" and employers, in return, give up "rights to raise common law defenses such as lack of negligence, contributory negligence on the part of the employee, and others." Minn. Stat. § 176.001 (2016) ; see also Breimhorst v. Beckman , 227 Minn. 409, 35 N.W.2d 719, 732 (1949) ("The law contemplates a reciprocal yielding and giving up of rights existing at common law for the new and enlarged rights and remedies given by the compensation act."). Thus, employers are "liable for compensation ... in every case of personal injury or death of an employee arising out of and in the course of employment without regard to the question of negligence." Minn. Stat. § 176.021, subd. 1 (2016) (emphasis added).
The "in the course of" and "arising out of" requirements are distinct. Dykhoff , 840 N.W.2d at 826. The " 'in the course of' requirement 'refers to the time, place, and circumstances of the incident causing the injury.' " Id. (quoting Gibberd v. Control Data Corp. , 424 N.W.2d 776, 780 (Minn. 1988) ). It is undisputed that Roller-Dick's injury occurred in the course of her employment. Thus, the only issue before us is whether Roller-Dick's injury arose out of her employment. In cases involving undisputed facts,[1] the question of whether an injury arises out of employment is a question of law that we review de novo. Hohlt v. Univ. of Minn. , 897 N.W.2d 777, 780 (Minn. 2017).[2]
I.
For an injury to "arise out of employment," there must be some "causal connection" between the injury and the employment. Dykhoff , 840 N.W.2d at 826.
*377 "This causal connection 'is supplied if the employment exposes the employee to a hazard which originates on the premises as a part of the working environment, or ... peculiarly exposes the employee to an external hazard whereby he is subjected to a different and greater risk than if he had been pursuing his ordinary personal affairs.' " Id. (quoting Nelson v. City of St. Paul , 249 Minn. 53, 81 N.W.2d 272, 275 (Minn. 1957) ). Here, Roller-Dick has not argued that she faced an "external hazard" to which she was peculiarly exposed by her employment. Therefore, this case turns on whether she faced a hazard that originated on the premises as a part of the working environment.
In Dykhoff , we identified two categories of hazards from our previous cases. The first category involved "special hazards" created by employment. Id. at 826-27. These included obvious or easily understood risks such as "unsafe conditions" in an employer-owned parking ramp, Foley v. Honeywell, Inc. , 488 N.W.2d 268, 272 (Minn. 1992), an employee's required presence in a high crime area, Hanson v. Robitshek-Schneider Co. , 209 Minn. 596, 297 N.W. 19, 21 (1941), and being struck by a ball on a playground in the case of an employee who was a teacher, Nelson , 81 N.W.2d at 275-76.
The second category involved hazards created by "neutral condition[s]" which are not "inherently dangerous or risky" but "something about [them] ... increases the employee's exposure to injury." Dykhoff , 840 N.W.2d at 827. To illustrate the concept, we referred to Kirchner v. County of Anoka , which concerned an employee who was injured after falling down a set of stairs in the county courthouse where he worked. 339 N.W.2d at 910. The employee had to descend the stairs without using the handrail because "[p]ersons ascending the staircase occupied the only side with a handrail." Id. We held that, because the circumstances "required Kirchner to negotiate the steps without [the] benefit of [the only handrail,] ... the requisite causal connection between the employment and the injury existed." Id. at 911. Thus, although the stairs were not obviously hazardous, the employee encountered a set of circumstances-the need to descend the stairs, the absence of a second handrail, the presence of other persons on the stairs-that increased the employee's risk of injury.
Dykhoff was a "neutral condition" case. 840 N.W.2d at 827. The facts concerned an employee who inexplicably fell while walking on her employer's floor and was injured as a result. Id. at 824. Unlike in Kirchner , Dykhoff encountered no circumstances originating on the premises as part of the working environment that increased the employee's risk of injury-the floor was clean, dry, and flat. Id. at 827. In other words, there was no explanation for the employee's fall and resulting injury, and thus no causal connection existed between the employee's work environment and her injury. Accordingly, we held that the employee's injury did not arise out of her employment. Id. at 828.
We have called this inquiry the "increased-risk test." Hohlt , 897 N.W.2d at 781 ; Kubis v. Cmty. Mem'l Hosp. Ass'n , 897 N.W.2d 254, 259 (Minn. 2017). We have considered the test in two precedential decisions since Dykhoff - Hohlt and Kubis .[3]
*378 Kubis concerned an employee who fell as she was ascending stairs on her employer's premises. 897 N.W.2d at 257. Before the compensation judge, the employee asserted that she had been "rushing" to get up the stairs because she was concerned about clocking out in time. Id. at 258. Therefore, the primary issue before both the compensation judge and the WCCA was whether the employee rushing up the stairs-specifically because she had work-related concerns about the time-increased her risk of injury. Id. Because the compensation judge did not find her reasons for "rushing" to be credible, the judge determined that her injury did not arise out of employment and denied her claim. Id. The WCCA reversed, again focusing on the "rushing" aspect. Id. The WCCA concluded that the employee had two possible motives for hurrying, but the compensation judge had only considered one of them. Id. Because the WCCA determined that the employee's second motivation for rushing was supported by the evidence, it held that the injury arose out of employment. Id. at 258-59.
On appeal, we held that the WCCA exceeded the proper scope of review by substituting its own view of the "rushing" evidence for the findings of the compensation judge. Id. at 263. In so holding, we did not squarely decide the case based on the merits of the "arising out of" issue. In dicta, however, we suggested that the employee's injury could not have arisen out of employment absent some credible, employment-related reason for hurrying up the stairs. Id. at 261-62. We also discussed the absence of defects or other additionally hazardous conditions in Kubis that were present in previous stairway-fall cases. Id. at 261 n.5 (discussing Kirchner , 339 N.W.2d at 910-11, and Kainz , 860 N.W.2d at 380 ).
To summarize, Kubis was a case about the standard of review to which the WCCA must adhere when reviewing the findings of a compensation judge. The compensation judge decided the case on narrow grounds-whether the employee's claimed reasons for her fall were credible. The compensation judge decided they were not. The WCCA superseded the compensation judge's role and made a credibility determination of its own. Thus, Kubis presented a factual dispute. By contrast, this is now a case of undisputed facts. Therefore, Kubis does not control here.
We decided Hohlt on the same day as Kubis . 897 N.W.2d at 777. Hohlt concerned an employee who was injured after she fell on an icy sidewalk owned and maintained by her employer, the University. 897 N.W.2d at 779. The University argued that, under Dykhoff , an employee must face a risk of injury beyond that which he or she would face in his or her everyday life for any resulting injury to arise out of employment. Id. at 783. Accordingly, the University argued that, because Hohlt faced a perfectly ordinary risk-icy Minnesota sidewalks-her injury could not have arisen out of employment. Id. We disagreed. Id.
We concluded that Hohlt's employment exposed her to a hazard-the icy sidewalk-that caused her injury. Id. at 781. Therefore, her injury arose out of her employment. Id. We expressed a concern that "sharpening the increased risk test" to require a risk other than those faced in daily life "would eliminate a broad swath of compensable injuries." Id. at 783. A contrary *379 view, we said, would preclude hotel maids, landscape workers, delivery drivers, cooks, and employees in many other occupations from receiving compensation for work-related injuries. Id.
In so holding, we affirmed the core principles underlying our conclusion in Dykhoff : for an injury sustained on an employer's premises to arise out of employment, the employee must have faced a hazard that originated on the premises as part of the working environment, thus supplying the requisite causal connection between the injury and employment. Such injuries are explained due to the employee's exposure to the hazard. Injuries caused by inexplicable slip-and-falls, as was at issue in Dykhoff , do not arise out of employment because employees in such cases have not faced a hazard which would explain the cause of their injury.
II.
Having established the rule of law that governs this case-that an injury arises out of employment when there is a causal connection between the injury and the employment-we must now apply that rule and decide whether there was a causal connection between Roller-Dick's injury on the stairway and her employment. The compensation judge found that there was nothing unusually dangerous about the stairs themselves-they were a reasonable and consistent height, and they were free of debris, moisture, and defects. The stairway was equipped with handrails on both sides. Roller-Dick regularly used the stairs to exit her workplace. Due to the circumstances on this particular day, Roller-Dick was not using the handrails as she was descending the stairs. She was carrying a plant from her desk that had been given to her by a coworker, as well as her handbag. These circumstances created an increased risk that Roller-Dick would fall and injure herself on the stairs, thus satisfying the requisite causal connection between the workplace and her injury.[4]
Furthermore, this case is on all fours with Kirchner , which we relied on in Dykhoff to distinguish between an explained and an unexplained injury. In Kirchner , the employee was faced with a hazard-stairs. 339 N.W.2d at 910. Due to the circumstances (other persons using the stairs), the employee was not holding onto the handrail at the time of his fall. Id. Due to the circumstances in this case (the fact that her hands were full), Roller-Dick was also not using the handrail.
In workers' compensation cases, we do not inquire into whether the circumstances that led to an employee's injury were attributable to either the employee or the employer. See Minn. Stat. § 176.021, subd. 1 ("Every employer is liable for compensation ... in every case of personal injury or death of an employee arising out of and in the course of employment without regard to the question of negligence ." (emphasis added) ). We simply ask whether there was a causal connection between the injury and the workplace. When an employee faces a hazard originating on the premises as part of the working environment, the requisite causal connection is satisfied. See Dykhoff , 840 N.W.2d at 826.
*380 The dissent's position that Roller-Dick's fall is not compensable because it was caused by what the dissent calls her "decision not to take advantage of the safety the handrails provided" smacks of a return to the negligence standard the Workers' Compensation Act expressly rejects. See Minn. Stat. § 176.021, subd. 1. If the dissent were correct, the employee in Kirchner should not have been compensated, because he chose not to wait to use the handrail, but went down the steps without using it. Yet we concluded that the injury satisfied the "requisite causal connection" to employment. Kirchner , 339 N.W.2d at 911.
Similarly, the dissent's insistence that the stairway "complied with all relevant safety standards" is legally irrelevant. An employer's obligation to maintain a clean and safe workplace is wholly distinct from the duty imposed on employers by workers' compensation law. That duty is to compensate employees for injuries arising out of and in the course of employment without regard to negligence on the part of the employee or the employer . Minn. Stat. § 176.021, subd. 1. We decline the dissent's theory to transplant negligence law into the "arising out of" requirement of workers' compensation law.[5]
Here, as the compensation judge said, it is "undoubtedly true" that Roller-Dick was exposed to circumstances in her workplace that increased her risk of falling. As a matter of law, those circumstances provided the causal connection between the injury and the workplace.[6] Therefore, we hold that the injury as a result of her fall arose out of her employment.
CONCLUSION
For the foregoing reasons, the decision of the Workers' Compensation Court of Appeals is affirmed.
Affirmed.
THISSEN, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.
Dissenting, Gildea, C.J., Anderson, J.
DISSENT

Because Roller-Dick does not pursue the argument that she fell, at least in part, because her shoe "stuck" to the non-slip treads on the stairs, the facts of this case are now undisputed.

Relators argue that the WCCA exceeded the proper scope of review when it determined "issues and theories" not raised on appeal. Relators argue first that the only "issue" Roller-Dick raised on appeal was whether the compensation judge improperly applied a "negligence standard" and that the WCCA abused its discretion when it determined that the compensation judge applied the "incorrect test" to determine whether Roller-Dick's injury arose out of her employment. Second, Relators argue that the WCCA abused its discretion when it determined that Roller-Dick's injury arose out of her employment using a "theory of compensability" not raised by Roller-Dick before the compensation judge.
Neither of these arguments has merit. Roller-Dick's brief to the WCCA makes clear that she challenged the application of a legal requirement that the stairs be defective or more hazardous than normal for her injury to be compensable. In other words, she argued that the compensation judge applied the incorrect legal test. Further, because the WCCA determined that the compensation judge erred as a matter of law, it did not decide the case based on a new "theory of compensability."

We also considered Dykhoff in two cases that resulted in non-precedential orders. In Arrowhead Senior Living Community v. Kainz , 860 N.W.2d 379, 380-81 (Minn. 2015), involving an employee who fell on stairs on her employer's premises, we summarily reversed and remanded the case to the compensation judge for consideration in light of Dykhoff . In Crushshon v. New American Hospitality, Inc. , No. A16-1522, Order at 1-2 (Minn. filed Oct. 25, 2017), we summarily affirmed the WCCA's decision that an employee's trip and fall on an irregular concrete surface on her employer's premises arose out of her employment.

The dissent asserts that we exceed the proper scope of review by substituting our judgment for that of the fact-finder. Yet the dissent notes that we "do[ ] not ... make any contention that [the compensation judge's findings] are erroneous or without evidentiary support." The dissent's observation is accurate-the relevant facts here are not in dispute. We are thus faced with a question of law on which we must give the fact-finder no deference. See Hohlt , 897 N.W.2d at 780. It is the dissent that misapprehends the scope of review.

Moreover, we have expressly rejected any legal requirement that the circumstances in the workplace that cause an employee's injury be related to an employee's work duties. Breimhorst , 35 N.W.2d at 728 (stating that the primary question in workers' compensation cases is whether "employment is the predominant factor in peculiarly exposing the [employee] ... to a hazard which may or may not be peculiar to or exclusively associated with the employment, and which hazard, though part of the general working environment, may be in direct consequence of an ... event produced wholly within or without the orbit of work done for the employer by the claimant or others"). We only require a causal connection between the injury and the workplace, one that is satisfied if an employee faces hazardous conditions originating on the premises as part of the working environment. Accordingly, the compensation judge's conclusion that Roller-Dick's injury did not arise out of her employment because she could not identify any "work-related" reason for her fall is incorrect as a matter of law.

We need not hold today, as the WCCA did, that stairs themselves are workplace hazards exposing employees to an increased risk of injury. Rather, we conclude that the now-undisputed factual circumstances surrounding Roller-Dick's injury-established in the record-amount to an increased risk as a matter of law. Whether stairs generally are hazardous is a matter for another case and another record.